Chester and Hilda R. WARREN *v.* Toney ROBINSON,
Shirley ROBINSON, Warren G. SOUTHARD and Yvonne
WORKMAN

85-65                                      704 S.W.2d 614

Supreme Court of Arkansas
Opinion delivered February 24, 1986

*Susanne K. Roberts*, for appellant.

*Bill Strait*, for appellee.

JACK HOLT, JR., Chief Justice. This is a second appeal arising from a lawsuit over an easement for use of a roadway and contempt proceedings for violation of the trial court's previous orders. Our jurisdiction is based upon Sup. Ct. R. 29(1)(j).

In the previous appeal of this case, *Warren* v. *Cudd*, 261 Ark. 690, 550 S.W.2d 773 (1977), we affirmed the findings of the trial court establishing an easement, but we further held that the use of the roadway was restricted by the conditions mutually agreed upon by the parties' predecessors in title. The conditions were that the gate would be locked, that the public would be kept out, and that only the rebuilt roadway would be used. The Chancery Court decision was entered of record in September of 1976, and was affirmed as modified by this court in May of 1977.

In February, 1983, the appellees filed a petition in Chancery Court alleging the appellants had maliciously removed the existing gate and placed a fence across the roadway, thereby totally restricting appellees' use. This matter apparently was heard by the court on September 6, 1983, at which time the trial court found appellants in contempt of court. The court's order, however, was not filed of record until August 16, 1985.

On January 15, 1985, after another hearing, the Chancellor found that:

> the defendants [appellants] are in contempt of this Court's prior orders and hereby orders that:

1. The defendants at no time will place any gate across the road in issue different from the type of metal gate used in September of 1976.

2. The defendants shall not place an obstruction of any kind whatsoever across the road in issue in a position different than that used in September, 1976.

3. The defendant, Chester Warren, is committed to the Yell County Jail until such time as he posts a $2,500.00 cash compliance bond with the Yell Chancery Clerk.

4. The defendants shall pay a $1,000.00 fine, and said fine is hereby suspended.

5. The defendants shall pay the plaintiff's attorney a fee of $250.00.

The appellants admit that they erected a wire-gap gate on the perimeter of their property, some 200 yards north of the metal gate which was established in 1976. They contend that the purpose of this new gate was to close their property to confine their cattle. Appellants maintain that they were confused regarding the restrictions placed on the roadway by the court in 1983, particularly in light of the fact that the order was not entered of record until after the appeal of the January, 1985 order.

Appellees testified that the wire-gap gate had been stapled to the post to prevent use, and that such a wire gate was an obstruction placed on the lands by the appellants, contrary to the court's order of September, 1976.

Appellants argue (1) The Chancellor's finding that appellants were in contempt of court was against the preponderance of the evidence; (2) The Chancellor erred in not finding appellees in contempt; (3) The Chancellor erred by not permitting appellants to construct a new gate at a different location on the roadway; and (4) The Chancellor abused his discretion by ruling on issues not properly before the court.

## 1. PREPONDERANCE OF EVIDENCE

Appellants contend that they cannot determine whether the court's citation was for civil or criminal contempt. The Chancellor's findings and the punishment meted out indicate that he considered the proceeding as one for both civil and criminal contempt. See *Dennison* v. *Mobley, Chancellor*, 257 Ark. 216, 515 S.W.2d 215 (1974).

■ In cases of civil contempt, the objective is the enforcement of the rights of the private parties to litigation. On the other hand, the primary reason for punishment for criminal contempt is the necessity for maintaining the dignity, integrity and authority of, and respect toward, courts, and the deterrent effect on others as just as important as the punishment of the offender. *Dennison* v. *Mobley, Chancellor, supra.*

■ The distinctions and reasons therefore have been discussed by us in *Songer* v. *State*, 236 Ark. 20, 364 S.W.2d 155 (1963), *citing Blackard, et al.* v. *State*, 217 Ark. 661, 232 S.W.2d 977, (1950). In *Songer* we stated:

> It is not questioned that punishment for civil contempt will be upheld by this Court unless the order of the trial court is arbitrary or against the weight of the evidence. However, it is not necessary for us to hold the petitioner was found guilty of only civil contempt in order to sustain the trial court. We think the trial court should be sustained even if the petitioner were guilty of criminal contempt.

■ Even though civil contempt findings are reviewed to determine where the preponderance of the evidence lies, we only examine the record for substantial evidence in criminal contempt cases and affirm a judgment finding criminal contempt unless we find no substantial evidentiary support. *Dennison* v. *Mobley, Chancellor, supra.*

Weighing the testimony in light of these rules, we find the preponderance of the evidence supports the finding of civil contempt and there is substantial evidence to support the order of criminal contempt.

In the trial court's decree of 1976, the Chancellor found that the appellees had a right-of-way across appellants' property and

enjoined the appellants from molesting, interfering, or restricting in any way the appellees' right of use of the existing roadway. This decree was affirmed by this court, and modified to the extent that it was subject to certain conditions made by mutual agreement, *i.e.* the gate should be locked, the public would be kept out, and only the rebuilt road would be used.

Although the appellants claim confusion as to the court's findings and orders due to the lack of a written order after the 1983 contempt hearing, appellant, Hilda Warren, admitted that the Chancellor ordered them at the 1983 hearing to put the metal gate back where it was in September of 1976.

■ The general rule is that before a person may be held in contempt for violating a court order, that order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied. *Wood* v. *Goodson, Judge*, 253 Ark. 196, 485 S.W.2d 213 (1972). The Chancellor's 1983 order was not filed until five months after the notice of appeal of the 1985 order. Nevertheless, the court's order of 1976 is clear enough to warrant the finding that the appellants' conduct amounted to civil contempt of the 1976 order. Likewise, by finding contempt on the part of appellants and ordering appellant, Chester Warren, committed to jail until he posts a compliance bond, it is obvious the court intended punishment for criminal contempt in order to maintain the dignity, integrity and authority of the trial court.

■ As to the suspended $1,000 fine, we have held that a suspension of a punishment for contempt is in effect a complete remission. *Stewart, et al.* v. *State*, 221 Ark. 496, 254 S.W.2d 55 (1953).

## 2. COURT'S DISCRETION IN CONTEMPT MATTERS

■ The appellants argue that it is the appellees who should have been cited for contempt. Refusal of a trial court to punish an alleged contemnor will be reviewed by an appellate court only to determine whether there has been an abuse of discretion. *Barnes* v. *Pearson Termite & Pest Control, Inc.*, 266 Ark. 635, 587 S.W.2d 823 (1979). We find this argument without merit.

## 3. COURT'S DISCRETION TO MODIFY PREVIOUS ORDERS

■■ Appellants claim the Chancellor erred in his 1985 order by enjoining them from placing across the road any obstruction of a different type, or in a different position, than the gate utilized in September, 1976. The granting or denying of an injunction is a matter falling within the sound discretion of the trial court and its decision will not be reversed on appeal unless it is clearly erroneous. *Bassett* v. *City of Fayetteville*, 282 Ark. 395, 669 S.W.2d 1 (1984). Appellants argue that the trial court should allow the wire gate on the perimeter of their property to stand, as the construction of some gate was necessary to protect their property. Granted, the owner of a servient estate may erect gates across the way if they are so located, constructed or maintained as not unreasonably to interfere with the right of passage, and when they are necessary for the preservation and proper and efficient use of the servient estate. *Jordan* v. *Guinn & Etheridge*, 253 Ark. 315, 485 S.W.2d 715 (1972). However, the testimony is in sharp conflict as to whether the wire gate, particularly, as opposed to the 1976 metal gate, constitutes an obstruction to the roadway. In this regard, we do not find that the Chancellor's findings were clearly erroneous.

## 4. MATTERS NOT BEFORE THE TRIAL COURT

As to the final point argued by appellants, we find that the Chancellor did not err by ruling on issues not properly before the court and further, that the relief granted was proper. The trial court's finding that the appellants were in contempt merely reiterated the prior orders of 1976.

Affirmed.

PURTLE, J., not participating.