Gwenda Kaye WAKEFIELD *v.* Joel David WAKEFIELD and
Thomas Wakefield

CA 97–860 984 S.W.2d 32

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered December 2, 1998

*David Lewis Clark*, for appellant.

*James E. Davis*, for appellees.

S AM BIRD, Judge. Appellant Gwenda Kaye Wakefield appeals an order from the chancery court of Howard County contending that the chancellor erred by finding her in contempt, ordering her to pay appellees' attorney's fees and expert witness fees, and restraining her from seeking psychological or mental-health treatment for her two minor children without prior approval from the Department of Human Services (DHS). We reverse.

Appellee Joel David Wakefield and appellant were divorced on August 9, 1995, and there was incorporated into their divorce decree a separation, child-custody, and property-settlement agreement. By their agreement, custody of their two children, Heather and Kayla, was awarded to appellant, and Joel David Wakefield was granted visitation privileges. The agreement provided that if Joel David Wakefield did not exercise his visitation rights, then the paternal grandparents had the right to exercise them. Appellee Thomas Wakefield is the children's paternal grandfather. Joel David Wakefield lives with his parents, and appellees' visitations take place at their residence.

Appellant testified that about a year after the divorce became final, she sought counseling for Heather from Yvonne Fellers, a licensed clinical social worker, because Heather, then almost three years old, was having nightmares, becoming aggressive, had regressed from toilet training, and was "sexually acting out." In addition, appellant testified that statements made by Heather to her paternal grandmother and to a babysitter raised questions of possible sexual abuse.

Fellers arranged a meeting with Joel David Wakefield on October 15 and informed him of her suspicions of improper sexual touching by Thomas Wakefield, known to Heather as "Paw-paw." Fellers also reported the suspected sexual abuse to DHS. About a week after Fellers reported the possibility of sexual abuse to DHS, DHS conducted a physical examination of Heather at Arkansas Children's Hospital, and no physical signs of sexual abuse were present.

Appellant states that DHS suggested to her, and that appellant suggested to her ex-husband, that they arrange some kind of supervised visitation for the children. Appellant states that she was told by DHS that if she knowingly exposed her children to potential sexual abuse, she would risk having them removed from her custody and placed in foster care. Because her ex-husband would not agree to supervised visitation, appellant felt she had no choice but to deny visitation.

Appellant moved to restrict visitation to a location away from the father's current residence while the investigation was pending, and appellee Joel David Wakefield moved for contempt charges against appellant because she denied unrestricted visitation on October 19 and 20.

A temporary hearing was held on October 30, 1996, before Chancellor Ted Capeheart. Following the hearing, Chancellor Capeheart announced from the bench that he found no basis for appellant's concerns, found her in contempt for denying visitation on October 19 and 20, and ordered her to pay $500 as appellee's attorney fees, but suspended payment on condition that appellant comply with his orders previously entered.

Pursuant to Fellers's suggestion, appellant had been conducting videotaped play therapy of Heather as part of a group parenting program, and after viewing the videotape, Fellers stated that Heather was near a psychotic breakdown and suggested immediate psychiatric evaluations.

On October 31, Dr. Greg Brown, a child psychiatrist, admitted Heather to Charter Forest Health System for five nights, resulting in another denial of appellees' visitation on November 1 and 2. During the time she was in the hospital, Heather was assessed by a clinical neuropsychologist, and she underwent two physical examinations by pediatricians. Heather was discharged on November 5 and diagnosed with posttraumatic stress disorder with continued concerns about sexual-abuse allegations.

On November 13, Judge Capeheart signed an order setting forth the findings that he had announced from the bench at the October 30 hearing. Also, on November 13, Judge Capeheart

filed a letter addressed to the parties' attorneys stating that he was recusing from the case because he could not be fair to appellant. The chancellor's letter stated,

> I must recuse in this case because I cannot be fair. I suspect the Plaintiff's family has encouraged the Plaintiff to make these accusations to gain an advantage in their visitation dispute. I know too much from past cases involving the family and cannot be fair in this case to Mrs. Wakefield.

On November 14, appellee Joel David Wakefield filed a petition for change of custody and another petition for contempt. Appellant responded with a petition for order of protection, a petition to modify visitation, a petition for contempt due to non-payment of support, and a petition to set aside the earlier finding of contempt.

A hearing was held on November 26 before Judge Robert Lowery. Appellant testified that before she suspected possible sexual abuse, she had never denied visitation. She stated that she denied visitation because she was fearful that Heather had been abused and would be again, and that the appellees would be angry with Heather "because she was talking and I was afraid for her safety."

She testified that on one occasion following a visitation, Heather appeared to be in pain, pointed toward her vaginal area, and would not sit down in the bathtub. Appellant also testified that once, when Heather was playing with her dolls, she would show the "Pawpaw doll" on top of the "Heather doll." She testified that she admitted Heather to the hospital immediately as her doctor recommended and because Heather's safety was at stake.

Dr. Brown testified that during the time he treated Heather at Charter Forest Health System he saw signs of the possibility of sexual abuse. From the abstract, it appears Dr. Brown testified:

> . . . I felt it was important to investigate things further especially with Heather's reporting from her own mouth who the perpetrator was. The reports from the counseling center showed concerns about a possibly sexually abused three year old who was acting out with aggressive behavior, sleep disturbance, night-mares, and play therapy sessions that pointed towards her having

been sexually abused. Heather told me about the nightmares, the trouble sleeping. Heather herself was able to say that she was touched on her body. She wasn't able to say who it was on the first day . . . . I wrote letters to Judge Capeheart, with copies to DHS and the State Police, saying that I did definitely feel there was evidence that Heather had been sexually abused and had identified her paternal grandfather, Pawpaw . . . . I do not feel it would be in the best interest of the child to visit the grandparent while there were open concerns about what was happening.

Lorili Sellers, an investigator with the Sex Crimes Division of the Arkansas State Police, also testified on appellant's behalf, and did not rule out the possibility of sexual abuse. Yvonne Fellers also testified that although there was no concrete physical evidence, her evaluation was that Heather had been sexually abused.

The appellees presented their own expert witness, Dr. Betty Feir, a clinical psychologist, who diagnosed Heather with post-traumatic stress disorder. Dr. Feir testified that after she watched the videotapes, she felt that Heather's behavior was associated with the upcoming Halloween holiday. Also, she said that Heather's violent behavior was often a repetition of phrases her mother would say, such as, "Do you want me to shut up," which Heather would then repeat, saying, "Shut up." She stated that she had not heard anything or any testimony that would indicate conclusively that there was any abuse. She also testified that the physical examinations Heather had undergone in order to detect possible abuse had been traumatic. She merely suggested that, in her opinion, there were a number of "red flags" that pointed to the possibility that appellant was hysterical and overreacting to reports that Heather had been abused, in the absence of physical evidence.

Dr. Feir stated that she interviewed the appellees and their families and friends when evaluating the possibility of sexual abuse, but she conceded that she had neither evaluated nor interviewed Heather. She testified that even though she did not see any physical signs of sexual abuse, she would not rule out such a possibility. Moreover, she said, "I wouldn't think it would be too abnormal for a mother to be overly worried when she has been told by two experts they feel there is a very good possibility that

sexual abuse has occurred. She was also told by two experts that it hadn't occurred."

Judge Lowery granted a motion to dismiss all of appellant's motions and petitions, stating that the testimony was speculative and tenuous and that no witness had confirmed any sexual abuse. He denied Joel David Wakefield's motion for change of custody. He then revoked the $500 attorney's fees suspension and awarded an additional $1,000 to Thomas Wakefield in attorney's fees. He required appellant to seek court approval prior to pursuing what he found were speculative, spurious, and totally false claims of sexual abuse. A review hearing was set for December 18.

At the review hearing, appellee Thomas Wakefield was permitted to testify as to his court expenses, stating that he had paid Dr. Feir $3,500 and still owed her $1,050. The chancellor ordered that appellant was not to seek psychiatric treatment for the children without approval from DHS, and that appellant was to pay $4,550 for Dr. Feir's testimony and $1,000 in attorney's fees.[1]

Appellant argues that the court erred by finding her in willful contempt, in granting $1,000 in attorney's fees and $4,550 in fees for an expert witness, and in stating that she cannot seek treatment for her children, without DHS approval.

Appellant was found in willful contempt twice. First, she was found in contempt for denying visitation on October 19 and 20 by Judge Capeheart who sua sponte recused the same day he signed the order. We find this order void because the chancellor erred in signing such an order the same day he recused from the case stating he could not be fair.

The Arkansas Supreme Court has held that where a judge exhibits bias or the appearance of bias, this court should reverse. *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996). In addition, the proper administration of law requires not only that judges refrain from actual bias, but that they also avoid all appearances of unfairness. *Id.* Whether a judge has become biased to

---

[1] When making oral findings at the end of the hearing on November 26, the chancellor ordered appellant to pay $1,000 in attorney's fees. However, he did not include this $1,000 award in his written order that was entered on December 30.

the point that he or she should disqualify is a matter to be confined to the conscience of the judge because bias is a subjective matter within the knowledge of the judge. *Id.*

■ In the case at bar, Judge Capeheart entered the order and sent a letter stating that he could not be fair to appellant. He wrote, "I must recuse from this case because I cannot be fair. I suspect the Plaintiff's family has encouraged the Plaintiff to make these accusations to gain an advantage in their visitation dispute." This letter constitutes substantial evidence of bias; therefore, Judge Capeheart's order finding appellant in contempt and ordering her to pay $500 in appellees' attorney's fees if she did not comply with his order is void. Because Judge Capeheart was biased, he should have disqualified himself and withdrawn from the case and should not have entered the order. *Noland v. Noland, supra.*

■ Appellant also argues that Judge Lowery erred when, in a subsequent hearing, he found that appellant had not acted in compliance with Judge Capeheart's order and revoked the $500 sanction that had been suspended. Because we have held that Judge Capeheart's order was void, we hold that Judge Lowery could not then revoke the suspension of a void order.

Appellant was also found in contempt by Judge Lowery and ordered to pay $4,550 in expert witness fees, and an additional $1,000 in attorney's fees. We also reverse this order.

■ ■ For a person to be held in contempt for violating a court order, that order must be clear and definite as to the duties imposed upon the party, and the directions must be expressed rather than implied. *Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995). In certain cases, a process for contempt may be used to effect civil remedies, the result of which is to make the innocent party whole from the consequences of contemptuous conduct. *Butler v. Comer*, 57 Ark. App. 117, 942 S.W.2d 278 (1997). In cases of civil contempt, the objective is the enforcement of the rights of the private parties to litigation. *Warren v. Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986). Punishment for civil contempt will be upheld by this court unless the trial court's order is arbitrary or against the weight of the evidence. *Dennison v. Mobley, Chancellor*, 257 Ark. 216, 515 S.W.2d 215 (1974).

■ We do not agree with the chancellor that appellant should be found in willful contempt, and we find his order to be arbitrary and against the weight of the evidence. The evidence does not reflect that the appellant's fears were completely unfounded. Although he did not find any evidence of sexual abuse, the judge himself noted that the mother was doing what she thought was best for her children. Further, it was a medical doctor who ordered that the child be admitted and supervised in a hospital, and we do not believe that appellant was unreasonable in obeying the doctor's order. In fact, as noted, sexual abuse was not completely ruled out by the experts. And appellant's expert witnesses stated that although there was no physical evidence of sexual abuse, they saw signs of sexual abuse.

■ Even the appellees' expert witness did not preclude the possibility that Heather had been subjected to sexual abuse. Moreover, she stated that it would not be abnormal for a mother to be overly worried when she had been told by two experts that there was a very good possibility that her daughter had been sexually abused. Based upon the testimony presented, there was evidence from which appellant could have reasonably concluded that her daughter might have been sexually abused by her grandfather.[2] Under these circumstances, we cannot say that a mother who is legitimately concerned about the welfare of her child and has acted upon the advice of DHS and qualified professionals is in willful contempt of court.

■ Further, Judge Lowery stated that the reason the appellant was even in court on December 18 was because she was in direct violation of the November 13 order of Judge Capeheart, who recused the same day the order was signed because he could not be fair. As we have stated above, Judge Capeheart should have recused before entering the order. We do not believe appellant can be in willful contempt of an order that should not have been

---

[2] We stress that our decision should not be construed as a determination by this court that there was evidence presented that is sufficient to establish that Thomas Wakefield has, in fact, sexually molested his granddaughter. It is our holding only that appellant was justified and reasonable in acting in reliance upon the advice of professionals, and that she was not, therefore, in willful contempt even though her actions had the effect of temporarily depriving appellees of their visitation rights.

entered in the first place because the judge knew he could not be fair.

 Because we have found that Judge Capeheart's order is void, we reverse the award of $500 in attorney's fees. And because we hold that Judge Lowery's order finding appellant in contempt and awarding $4,550 in expert witness fees and $1,000 in attorney's fees to be arbitrary and against the weight of the evidence, we reverse that order as well.

Reversed.

STROUD, NEAL, and GRIFFEN, JJ., agree.

ROBBINS, C.J., and ROGERS, J., dissent.

JOHN B. ROBBINS, Chief Judge, dissenting. I agree with the majority's decision that, because Judge Capeheart acknowledged that he could not be fair when he recused from presiding over this proceeding, he should not have found appellant in contempt, and Judge Lowery's revocation of the $500.00 sanction imposed by Judge Capeheart was invalid. However, I disagree with the majority's conclusion that Judge Lowery erred in finding Ms. Wakefield in contempt after she denied visitation on November 1 and 2 of 1996.

In a contempt proceeding, it is the chancery court's duty to determine whether the alleged contemnor willfully disobeyed a previous court order. *Snisky v. Whisenhunt*, 44 Ark. App. 13, 864 S.W.2d 875 (1993). When there are conflicts in the testimony, it is the duty of the appellate court to give the same force to findings of the trial court in contempt proceedings as in other cases when the testimony is conflicting, and every presumption must be indulged in favor of the trial court's judgment. *Dennison v. Mobley, Chancellor*, 257 Ark. 217, 515 S.W.2d 215 (1974).

In the instant case, the chancery court gave great credence to the testimony of Dr. Feir. It was her opinion that there was insufficient evidence of sexual abuse and that visitation should not be restricted in any way. While it may be true that Ms. Wakefield's fears were not completely unfounded, it is undisputed that, prior to deliberately denying visitation, she failed to petition the chan-

cery court for a temporary, emergency waiver of the visitation schedule. Indeed, the chancery court was not notified of her failure to permit the scheduled visitation until Mr. Wakefield subsequently filed a petition for change of custody and motion for contempt.

I am not unsympathetic to a parent's interest in protecting his or her child from what is perceived to be a potentially dangerous situation. However, in my view, if a parent willfully disregards a court order regarding visitation, and does so without any effort to obtain emergency relief from the appropriate chancery court, the parent proceeds at his or her peril. If the evidence adduced at a subsequent hearing reveals to the satisfaction of the chancellor that the child's safety would not have been compromised, then the intentional failure to allow visitation is without justification and an order of willful contempt is the proper sanction. I submit that this is exactly what occurred in this case.

I would affirm Judge Lowery's finding of contempt[1], and would further affirm the $4,550.00 expert-witness fee award and the chancellor's decision to require court approval prior to seeking further psychiatric evaluations. A chancellor has the inherent power to make an innocent party whole from the consequences of another party's contempt, *see Gavin v. Gavin*, 319 Ark. 270, 890 S.W.2d 592 (1995), and in the case at bar it is apparent that the retention of Dr. Feir as an expert witness was necessitated by Ms. Wakefield's refusal to permit visitation. This is true because her testimony was elicited to rebut the evidence tending to show that Heather showed signs of being abused by her grandfather, and that as a result the denial of visitation was justified. As for the requirement that any further psychiatric treatment is prohibited without prior court approval, it is important to note that Ms. Wakefield is

---

[1] While the majority finds that Judge Lowery's finding of contempt was ineffective because it was premised on a violation of visitation orders set by Judge Capeheart in a proceeding in which he should have recused, I disagree with this assessment. Judge Capeheart's order recited that the $500.00 attorney's fee was suspended conditioned on Ms. Wakefield's compliance with orders previously entered. The order does not reflect the imposition of any additional visitation requirements. Therefore, it is apparent that Judge Lowery's finding of contempt was for a violation of visitation orders that were issued prior to the October 30, 1996, hearing before Judge Capeheart.

still able to seek DHS counseling for her children, and she is free to petition the court for further counseling or treatment if more substantial symptoms of abuse surface. This requirement was warranted based on the chancellor's finding that there was insufficient evidence of sexual abuse and Ms. Wakefield was exposing Heather to a potentially damaging situation.

For the reasons expressed above, I respectfully dissent.

ROGERS, J., joins in this dissent.