

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–15–365

| | |
|---|---|
| AMBER KIMBLE SHIELDS<br>APPELLANT<br><br>V.<br><br>MITCHELL KIMBLE<br>APPELLEE | **Opinion Delivered** March 9, 2016<br><br>APPEAL FROM THE RANDOLPH COUNTY CIRCUIT COURT<br>[NO. DR–07–54]<br><br>HONORABLE PHILIP GREGORY SMITH, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Amber Kimble Shields appeals the Randolph County Circuit Court's order awarding Mitchell Kimble $15,539.94 in attorney's fees and costs for Shields's contemptuous conduct and sentencing Shields to 120 days in jail if she did not pay the sum within 180 days. On appeal, Shields argues that (1) the contempt finding infringes on the principles set forth in the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") because a Montana court properly exercised emergency jurisdiction over the case; (2) the contempt finding is void because the court's order conflicted with a Montana order; (3) the contempt finding is invalid because she relied on professional advice to not return their daughter, B.K., to Arkansas; (4) the contempt finding is based on insufficient evidence; (5) the hearings on September 13, 2010, and June 30, 2014, violated her due-process rights; and (6) the court–

SLIP OPINION

ordered supervised visitation violated her due-process rights and her right as a fit parent. We affirm.[1]

The parties have been engaged in extensive litigation beginning with their divorce in the Randolph County Circuit Court on May 2, 2007. In the uncontested divorce decree, the court awarded custody of B.K. to Shields subject to visitation with Kimble. Shortly after the divorce, in September 2007, Shields and B.K. moved to Montana.

On May 30, 2008, Kimble filed a petition for change of custody or to set specific visitation in the Randolph County Circuit Court. On June 26, 2008, Shields filed an objection to jurisdiction, alleging that Arkansas did not retain jurisdiction of the case under the UCCJEA and that Montana would be a more appropriate forum to determine the best interest of the child. In July 2008, Shields married Jeremy Shields.

On August 25, 2008, Shields informed the court that Kimble had lodged with the Montana Department of Human Services ("MDHS") an allegation of sexual abuse of B.K. that was still being investigated. Specifically, the allegations of abuse stemmed from the child's statements to Kimble that Jeremy had showered with her.

On November 13, 2008, the circuit court denied Shields's objection to jurisdiction. On April 14, 2009, the court held a hearing on Kimble's petition to change custody, and on May 7, 2009, the court granted Kimble's petition and awarded him custody of B.K., subject to reasonable visitation with Shields. Shields appealed the May 7, 2009 order to this court,

---

[1]This is the second time this case has been before this court. We initially ordered a supplemental addendum due to deficiencies. *Shields v. Kimble*, 2016 Ark. App. 26.



asserting that the circuit court should have declined jurisdiction and erred in awarding Kimble custody of B.K.

During the appeal proceedings, on August 20, 2009, Shields petitioned the Randolph County Circuit Court for an emergency change of custody, alleging that B.K.'s stepbrother in Arkansas had sexually abused her. The Arkansas State Police Crimes Against Children investigated the allegations and found them unsubstantiated. The circuit court then denied Shields's petition. On June 2, 2010, this court affirmed the circuit court's May 7, 2009 order. *See Shields v. Kimble*, 2010 Ark. App. 479, 375 S.W.3d 738.

On August 3, 2010, while B.K. was visiting Shields in Montana for the summer, MDHS filed a petition for emergency legal custody of B.K. in the Park County District Court in Montana ("the Montana district court"). The petition alleged that B.K.'s stepbrother in Arkansas had inappropriately touched B.K. The Montana district court granted the petition but placed physical custody of B.K. with Shields. The order limited the custody to six months; however, the Montana district court extended the temporary custody multiple times throughout 2012.

On September 9, 2010, Kimble filed an emergency ex parte motion to enforce the UCCJEA in the Randolph County Circuit Court. Kimble informed the circuit court about the proceedings in Montana and asked the court to retain jurisdiction of the case. Following an ex parte hearing, on December 8, 2010, the Randolph County Circuit Court entered an order retaining jurisdiction, noting that the allegations concerning B.K.'s stepbrother had been "exhaustively investigated" by the State of Arkansas. The court also noted that, upon the

petition from MDHS, the Montana district court should have communicated with the Arkansas court concerning the issue of jurisdiction but it did not. The court stated that it had attempted to contact the Montana judge, but the judge's secretary informed him that the judge was unavailable for a month or longer while he was campaigning for his race for a seat on the Montana Supreme Court. The court further ordered that Shields shall "return the parties' minor child . . . to the State of Arkansas" within two weeks. The court noted that if Shields failed to return B.K. to Arkansas, contempt proceedings would be held.[2]

On December 22, 2010, Shields filed a motion for a new trial and for relief from the December 8, 2010 order from the Randolph County Circuit Court, asking the court to vacate its order retaining jurisdiction. Shields asserted that she was not afforded an opportunity to respond to Kimble's motion and that the allegations in Montana were well founded. The court did not issue a ruling on her motion.

On September 6, 2012, Kimble filed a petition to show cause in the Randolph County Circuit Court. He informed the court that Shields had not returned B.K. to Arkansas and asked the court to enter a show-cause order. On that same day, the circuit court entered a show-cause order directing Shields "to appear in the courtroom of the above styled case on the 8th of November 2012, at 9:00 a.m. to show cause why she should not be held in contempt for failing to comply with [the c]ourt's order of December, 2010."

---

[2]The court also ordered the Arkansas Department of Human Services to arrange an evaluation of B.K.'s stepbrother and that the results should be immediately delivered to the Montana district court.

On November 8, 2012, Shields failed to appear, and on that same day, the circuit court entered an order finding Shields in contempt. The court stated that "on the 8th of November 2012 [Shields] was not present in the court to show cause why she should not be held in contempt" and that it "therefore [found her] in [c]ontempt for not complying with the [c]ourt's order to show cause." The court ordered that a writ of body attachment issue and found that the issue of fees and costs would be determined after a full hearing. On November 8, 2012, the court issued a body attachment for contempt and filed a letter from MDHS on the record. The letter informed the Randolph County Circuit Court that the Montana district court had ordered temporary legal custody of B.K. with the MDHS and that Shields had been unable to return the child to Arkansas.

On January 4, 2013, the Montana district court entered an order placing permanent custody of B.K. with Shields. Kimble appealed the order to the Montana Supreme Court.

On January 23, 2013, Kimble renewed his petition to show cause with the Randolph County Circuit Court. He informed the court that the Montana district court had placed permanent custody of B.K. with Shields. Kimble asserted that, because the court had placed permanent custody of the child with Shields, she "no longer ha[d] the excuse of not being able to return the child to Arkansas because of the child being in Montana's custody and not her own."

On January 28, 2013, Shields filed a motion to set aside the November 8, 2012 contempt finding and to quash the body attachment. On February 4, 2013, Shields filed a motion to dismiss Kimble's renewed petition to show cause. She asserted that the circuit court

5

lacked jurisdiction over the case because the Montana district court had jurisdiction.

On April 25, 2013, Shields filed a motion to waive jurisdiction for inconvenient forum. She also asserted that the circuit court did not have jurisdiction because the Montana district court had exercised jurisdiction pursuant to the UCCJEA.

On August 6, 2013, the Montana Supreme Court reversed the district court's order placing permanent custody of B.K. with Shields. The court noted that MDHS had conceded that the district court had "exceeded its jurisdiction under the UCCJEA." The court vacated all the district court's orders concerning B.K. as "void for lack of jurisdiction."

On August 20, 2013, the Randolph County Circuit Court issued an order denying Shields's motion to waive jurisdiction. On August 27, 2013, Kimble filed a motion to modify visitation in the circuit court. He asserted that he had retrieved B.K. from Montana and that he had learned that Shields planned to visit B.K. on August 31, 2013. He asked the court to order supervised visitation.

On September 24, 2013, Kimble filed a motion for attorney's fees in the Randolph County Circuit Court. He noted that the court had found Shields in contempt of court in November 2012, and that the court had ordered that the issue of fees and costs would be determined after a hearing. He asserted that his attorney's fees and costs for defending the suit had "swelled between $12,000 and $18,000." He asked that the court allow him to present evidence of the fees and costs at a hearing.

On November 22, 2013, the court entered an order modifying Shields's visitation to only supervised visitation. The court deferred the issue of attorney's fees until a final hearing.



On January 15, 2014, Kimble filed a motion for an order regarding contempt remedies.

On February 13, 2014, Shields filed a motion to set aside the body attachment for contempt. She pointed out that B.K. had returned to Arkansas and was in the custody of Kimble. On June 11, 2014, Shields filed a motion for emergency temporary relief and to modify custody.

On June 30, 2014, the court held a hearing. The court first addressed Shields's motion for emergency temporary relief and to modify custody. The court limited the hearing on the emergency motion to one hour. The court then addressed Kimble's motion for attorney's fees and costs. Kimble introduced into evidence the receipts of his attorney's fees from the Montana and Arkansas proceedings and receipts of his travel costs for his trips to and from Montana for hearings. He also testified about those expenses. He further admitted that he received some child-support payments from Shields when B.K. was not in his custody and that he had used that money to help pay for the legal and travel expenses.

Kimble also called Shields to the stand. She admitted that MDHS had placed custody of B.K. with her on January 4, 2013; that she had control of B.K. at that time; and that she knew about the outstanding order to return B.K. from the Arkansas court. She explained that she did not return B.K. to Arkansas when MDHS placed permanent custody of B.K. with her because B.K.'s counselors and MDHS were developing a transition plan for B.K.'s return to Arkansas. Shields also admitted that she knew the circuit court had ordered her to appear on November 8, 2012, to show cause why she did not return B.K. to Arkansas and that she did not appear at the hearing. She stated that she contacted her attorneys about the show-cause

order and that they informed her that the letter from the Montana district court "would suffice." Shields also testified that she did not return B.K. to Arkansas for twenty days following the Montana Supreme Court's order because DHS and B.K.'s counselors were developing a transition plan. In her closing arguments, Shields asserted that she was only acting pursuant to what MDHS had told her and for the best interest of B.K.

At the conclusion of the hearing, the court awarded Kimble $15,539.94 in attorney's fees and costs and sentenced Shields to 120 days in jail if she failed to pay the sum within 180 days. The court entered a written order on December 22, 2014, that reflected its oral pronouncement.[3]

Shields appealed the December 22, 2014 order to this court on December 30, 2014. On appeal, Shields argues that (1) the contempt finding infringes on the principles set forth in the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") because a Montana court properly exercised emergency jurisdiction over the case; (2) the contempt finding is void because the court's order conflicted with the Montana order; (3) the contempt finding is invalid because she relied on professional advice to not return their daughter, B.K., to Arkansas; (4) the contempt finding is based on insufficient evidence; (5) the hearings on September 13, 2010, and June 30, 2014, violated her due-process rights; and (6) the court-ordered supervised visitation violated her due-process rights and her right as a fit parent.[4]

---

[3] The court also ordered Shields to pay $4,261 in child-support arrearages.

[4] In his response, Kimble asserts that this court does not have jurisdiction to address Shields's contempt arguments because she failed to timely appeal the contempt order. Specifically, Kimble notes that the court entered its order finding Shields in contempt on November 8, 2012, but Shields did not file her notice of appeal until December 30, 2014.



The court will first address Shields's four arguments concerning the court's contempt finding. Contempt is categorized into criminal contempt and civil contempt. *Ward v. Ward*, 2014 Ark. App. 261, 434 S.W.3d 923. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* Civil contempt can be either compensatory or coercive in nature. *Holifield v. Mullenax Fin. & Tax Advisory Grp., Inc.*, 2009 Ark. App. 280, 307 S.W.3d 608. A compensatory penalty is a remedial fine to compensate one party for the other party's noncompliance. *Id.*

In this case, the circuit court did not state whether it was holding Shields in civil or criminal contempt. However, the record reveals that, in addition to the purpose of compensating Kimble for Shields's noncompliance with the court's order, the fine imposed was for the purpose of punishing Shields's deliberate interference with the court's order. Thus, this was both a civil and a criminal contempt proceeding. *See Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992).

We apply the standard of review for criminal contempt because it, as well as the burden of proof, is stricter than that for civil contempt. *Id.* In a criminal contempt proceeding, proof of contempt must exist in the circuit court beyond a reasonable doubt. *Jolly v. Jolly*, 290 Ark. 352, 719 S.W.2d 430 (1986). On appellate review, we consider the evidence in the light

---

Kimble's argument is without merit. An order of contempt is not final and appealable where no sanctions have been imposed. *Shafer v. Estate of Shafer*, 2010 Ark. App. 476. Here, the circuit court did not impose sanctions until it entered its December 22, 2014 order. Therefore, Shields's notice of appeal was timely.

most favorable to the circuit court's decision concerning the contempt and affirm if there is substantial evidence to support its decision. *Henry*, 309 Ark. 336, 832 S.W.2d 467.

To establish contempt, there must be willful disobedience of a valid order of a court. *Holifield*, 2009 Ark. App. 280, 307 S.W.3d 608. Contempt is a matter between the judge and the litigant, not between two opposing litigants. *Id*. Before a person can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id*.

Shields first asserts that the contempt finding infringes on UCCJEA principles because Montana properly exercised emergency jurisdiction over B.K. pursuant to the UCCJEA. Regardless of whether Montana properly exercised emergency jurisdiction, on September 6, 2012, the court ordered Shields to appear on November 8, 2012, to show cause why she did not return B.K. to Arkansas, and Shields failed to appear. Shields admitted at the June 14, 2014 hearing that she knew about the court's show-cause order but chose to not appear on that date. Accordingly, whether Montana properly exercised jurisdiction over B.K. does not excuse Shields from appearing before the circuit court.

Shields next argues that the contempt finding is void because the court's order to return B.K. to Arkansas conflicted with Montana's order that B.K. remain in MDHS custody; thus, she claims, the order was unclear on the duty it imposed. Again, the circuit court held Shields in contempt only after she failed to appear at the November 8, 2012 hearing to show cause why she had not returned B.K. to Arkansas. The September 6, 2012 order clearly directed Shields "to appear in the courtroom of the above styled case on the 8th of November

10

2012." Accordingly, the circuit court's order was clear on the duty it imposed on Shields.

Shields also argues that the contempt finding is invalid because she relied on professional advice to not return B.K. to Arkansas because the alleged sexual abuser, B.K.'s stepbrother, resided there. In making her argument, Shields relies on our decision in *Wakefield v. Wakefield*, 64 Ark. App. 147, 984 S.W.2d 32 (1998). In *Wakefield*, this court reversed a trial court's contempt finding against a mother who denied a father court-ordered visitation of their child because a counselor and a doctor had reported to her that they suspected sexual abuse of the child by her paternal grandfather. *Id.* This court stated that it could not hold "a mother who is legitimately concerned about the welfare of her child and has acted upon the advice of DHS and qualified professionals . . . in willful contempt of court." *Id.* at 155, 984 S.W.2d at 36. At the contempt hearing, the mother presented expert witnesses' testimony that they saw signs of sexual abuse in the child, and the father's expert witness testified that she could not preclude the possibility of sexual abuse. *Id.*

We hold that the circumstances in *Wakefield* are distinguishable from the circumstances in this case. Here, the court did not hold Shields in contempt solely for denying Kimble access to B.K. The court held her in contempt for failing to appear at the November 8, 2012, hearing to show cause why she had not returned B.K. to Arkansas. Accordingly, *Wakefield* is inapplicable to this case.

Shields also argues that the contempt order is based on insufficient evidence. In making her argument, Shields maintains that the sexual-abuse allegations against B.K.'s stepbrother were founded and that she and MDHS were only trying to protect B.K. Again, regardless of

11

whether sexual-abuse allegations were founded, Shields admitted at the June 14, 2014 hearing that she knew about the court's order to appear on November 8, 2012, and that she failed to appear on that day. Accordingly, sufficient evidence supports the contempt finding.

Shields next argues that her due-process rights were violated when the court held the ex parte hearing on September 13, 2010, on Kimble's emergency ex parte motion. She also asserts that her due-process rights were violated when the court addressed the contempt sanctions at the June 14, 2014 hearing.

As to Shields's argument concerning the September 13, 2010 hearing, she failed to raise a due-process argument in her motion for a new trial filed following the ex-parte proceedings. We will not consider an issue raised for the first time on appeal. *Morgan v. Century 21 Perry Real Estate*, 78 Ark. App. 180, 79 S.W.3d 878 (2002) (holding that an issue was not preserved for review when the appellant failed to raise the issue as a basis for his motion to set aside a default judgment). Shields also failed to raise the issue of due process when the court considered Kimble's motion for sanctions at the June 14, 2014 hearing. She did not ask that the court continue the hearing. Instead, she defended herself and presented testimony. Accordingly, Shields's due-process arguments concerning the September 13, 2010 hearing and the June 14, 2014 hearing are not preserved for our review, and we affirm on these points.

Shields finally argues that the court's order of supervised visitation violated her due-process rights and her right as a fit parent. Shields has failed to present this court with convincing and developed arguments on this issue. Our supreme court has held that the failure to develop a point legally or factually is reason enough to affirm the circuit court.

*Walters v. Dobbins*, 2010 Ark. 260, 370 S.W.3d 209. Accordingly, because Shields failed to present convincing and developed arguments on how her due-process rights and her right as a fit parent were violated by the court's order of supervised visitation, we affirm on this point.

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Amber Kimble,* pro se appellant.

*Devon N. Holder*, for appellee.