Cite as 2020 Ark. App. 388

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-18-880

FREDERICK R. POTTER, INDIVIDUALLY AND AS TRUSTEE OF THE FREDERICK R. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004, AND AS TRUSTEE OF THE FRED POTTER REVOCABLE TRUST ESTABLISHED JULY 10, 2013

APPELLANT

V.

CASSAUNDRA HOLMES, INDIVIDUALLY AND AS TRUSTEE OF THE BETTY L. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004; THOMAS WRIGHT; AND KEVIN WRIGHT

APPELLEES

Opinion Delivered: September 9, 2020

APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64CV-13-54]

HONORABLE DAVID H. MCCORMICK, JUDGE

AFFIRMED

## MEREDITH B. SWITZER, Judge

The appellant, Fred Potter, appeals an order of the Scott County Circuit Court holding him in contempt. The order that Potter challenges is one of three contempt orders that the circuit court entered after Potter had repeatedly failed to comply with an "Order for the Partition Sale of Personal Property" ("partition order") that the circuit court entered on December 29, 2017.

Potter has separately appealed the contempt orders. We decide all the appeals in separate opinions that we issue today. *See Potter v. Holmes*, 2020 Ark. App. 383, 608 S.W.3d

618; *Potter v. Holmes*, 2020 Ark. App. 391, 609 S.W.3d 422. In this case, we address Potter's challenge to the second order in the series, which the circuit court entered on July 26, 2018. Potter contends that the circuit court abused its discretion by excluding evidence he says would have demonstrated that he did not willfully disobey the partition order. He also asserts that the circuit court's finding of contempt is not supported by sufficient evidence. We affirm.

## I. *Factual Background*

We set forth the detailed factual background of the contempt order in *Potter v. Holmes*, 2020 Ark. App. 383, at 6–10, 608 S.W.3d at 623–25, in which the record overlaps with the record in this case. To summarize for our purposes here, Potter and his wife, Betty, transferred certain items of personal property into reciprocal mirror–image trusts in 2004. The trusts provided that four members of Betty's family and one member of Potter's would receive the residuary principal assets from both trusts.[1] Betty died in 2013, whereupon appellee Cassaundra Holmes succeeded her as trustee of Betty's trust.

The relationship between Potter and Holmes grew acrimonious after Betty's death. Potter filed a complaint alleging that Holmes had breached her fiduciary duties as the trustee of Betty's trust, and Holmes filed a counterclaim alleging breach of fiduciary duty, breach of contract, and conversion. Potter also used various methods to defy the circuit court's orders and repeatedly interfered with Holmes's attempts to inventory the property in the

---

[1]The five trust beneficiaries include appellee Cassaundra Holmes as well as appellees Thomas Wright and Kevin Wright. Vernon Wright and Allen Potter are the other two beneficiaries.

2

trusts, including removing all of the items of personal property from his and Betty's house in Waldron.

On September 7, 2017, shortly after we issued our opinion concluding their other litigation, *see Holmes v. Potter*, 2017 Ark. App. 378, 523 S.W.3d 397, Holmes filed a "Motion for Partition of Personal Property," asserting that Betty's Trust and Potter's Trust were "in conflict" over the appropriate division of the personal property—listed in the motion—that had been removed from Potter's house in Waldron. Accordingly, she requested a judicial sale of the property and equal division of the net proceeds.

The circuit court entered an order granting the motion on December 29, 2017. In the order, the court directed Potter to return the personal property listed in the motion, as well as in a five-page attachment to the order, within ten days. The court further ordered Potter to "put each item of personal property back to where it was" in the house, and to "notify [Holmes] of the date and time of return delivery of the personal property." The court also required Potter to "prepare and provide in advance to [Holmes] a detailed, itemized list of all of the personal property which [Potter] is returning to the house and property [in Waldron]." The order also provided that the property was to be auctioned once it was returned.

On February 8, 2018, Holmes moved to hold Potter in contempt. She alleged that despite the court's partition order, she "ha[d] not received notice of the date and time of the return delivery of the personal property" or "the detailed, itemized, list of all personal property which [Potter] is returning to the house and [real] property [in Waldron]." Holmes further alleged that she "did not receive notice that all of the personal property has been

moved back to [Waldron] so that [she] may secure the personal property." She requested, therefore, that Potter be held in contempt and "punished accordingly," including the immediate transfer of all of the personal property to her care and control so that it may be sold at a partition sale.

The circuit court heard the motion for contempt on May 10, 2018. At the hearing, Potter admitted, through counsel, that he failed to return all the personal property listed in the partition order. The circuit court found Potter in willful contempt and, among other things, ordered him to report to the Scott County Jail if he failed to comply with all of its directives by close of business on May 17, 2018. The court also warned Potter that "the court is tired of [Potter's] willful disobedience of the court's orders; that the court has had no other case before it with such willful disobedience; and that the court expects [Potter] to fully, completely, quickly, and specifically obey and comply with its orders."[2]

On June 4, 2018, the circuit court held a status hearing to determine whether Potter had complied. He had not. The court noted, in fact, that Potter reported to the Scott County Jail and was later released for medical reasons. Potter's counsel also admitted that Potter failed to provide a list of the returned items and still had not returned all the property listed in the partition order.

Consequently, on June 26, 2018, the circuit court entered another order finding that Potter "continues to be in contempt" because he had willfully "disobeyed, and continues to disobey, the previous orders of this court, including but not limited to the [partition

_____

[2]We address Potter's appeal from this order in *Potter v. Holmes*, 2020 Ark. App. 391, 609 S.W.3d 422. We briefly discuss it here to provide context for the order that Potter challenges in this case.

order]." The court warned Potter that he may be subject to criminal charges in the event that "any of the personal property listed in the courts order [is] missing" and ordered Potter to pay a daily penalty of $1,000 for each day he remained in contempt—dating back to June 4, 2018. The court also froze the assets of Potter's trust, ordering that with the exception of the income needed for his living expenses, Potter was required to petition the court for access to the trust assets. Potter now challenges the June 26 order in this appeal.

II. *Discussion*

A. Evidentiary Issue

Potter first argues that the circuit court erred by refusing to hear evidence allegedly demonstrating that he did not willfully violate the partition order. He claims that he offered evidence at the June 4, 2018 hearing that would have established that he complied with the order to the best of his ability, returning everything but a hopelessly disabled vehicle. Potter further claims that he attempted to introduce evidence that he did not have any knowledge of "the existence or whereabouts" of certain items, which the circuit court erroneously excluded. We must affirm because Potter has failed to preserve these evidentiary arguments for appellate review.

A party is bound by the scope and nature of the arguments he made in the circuit court, and arguments not raised at trial will not be addressed for the first time on appeal. *Goodson v. Bennett*, 2018 Ark. App. 444, at 13, 562 S.W.3d 847, 857–58. While Potter's counsel argued that Potter "has complied as best he can" and the vehicle still in his possession is "disabled," he made no effort to identify—let alone offer—any evidence supporting those

5

assertions. Consequently, we hold that the alleged evidentiary error is not preserved for our review.

## B. Sufficiency of the Evidence

Potter next challenges the finding of (continued) contempt that the circuit court made after the June 4, 2018 hearing, arguing that the court's determination of willful disobedience was not supported by sufficient evidence. He suggests that it is "unclear" whether the circuit court made a finding of civil or criminal contempt, but he argues that the evidence falls short of even the more lenient standard for civil contempt. According to Potter, the partition order was not clear in its terms and express in its commands, and it erroneously determined that certain items were trust property. There also was no evidence, he says, that he knew about—or could even locate—all the property that was listed in the partition order. We affirm.

"Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt, and punishment for such contempt is an inherent power of the court." *Balcom v. Crain*, 2016 Ark. App. 313, at 3, 496 S.W.3d 405, 407. Contempt can be either civil or criminal. *Id.* at 3–4, 496 S.W.3d at 407. Criminal contempt imposes an unconditional penalty that is "solely and exclusively punitive in character." *Id.* at 4, 496 S.W.3d at 407. "A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act." *Id.* Furthermore, "[b]ecause civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order." *Id.* Stated another way, civil contemnors "carry the keys of

6

their prison in their own pockets," and the nature of civil contempt "can be either compensatory or coercive in nature." *Id*. at 4, 496 S.W.3d at 408.

The June 26, 2018 contempt order has both civil and criminal features. It is apparent that the circuit court's primary objective was to compel compliance with the partition order. After all, the modified sanction, in which Potter was ordered to pay a $1,000 daily penalty, was to continue only while Potter "remain[ed] in contempt." The circuit court also unconditionally ordered, however, that Potter pay fines that had accumulated since June 4, 2018, and made the penalty payable to the clerk, which we have held makes it "punitive and constitutes a fine for criminal contempt." *Applegate v. Applegate*, 101 Ark. App. 289, 293–94, 275 S.W.3d 682, 685 (2008).

When we review a challenge to an order with features of both civil and criminal contempt, "[w]e apply the standard of review for criminal contempt because it, as well as the burden of proof, is stricter than for civil contempt." *Shields v. Kimble*, 2016 Ark. App. 151, at 9, 486 S.W.3d 791, 798. "In a criminal contempt proceeding, proof of contempt must exist in the circuit court beyond a reasonable doubt." *Id*. On appellate review, we consider the evidence in the light most favorable to the circuit court's decision concerning the contempt and affirm if there is substantial evidence to support its decision." *Id*. at 9–10, 486 S.W.3d at 798. We leave issues of credibility, however, for the fact-finder. *Balcom*, 2016 Ark. App. 313, at 4–5, 496 S.W.3d at 408.

"In order to establish contempt, there must be a willful disobedience of a valid order of the court." *Holifield v. Mullenax Fin. & Tax Advisory Grp., Inc.*, 2009 Ark. App. 280, at 3, 307 S.W.3d 608, 610. Furthermore, "[w]here a person is held in contempt for failure or

7

refusal to abide by a judge's order, the reviewing court does not look behind the order to determine whether it is valid." *Johnson v. Johnson*, 343 Ark. 186, 197, 33 S.W.3d 492, 498 (2000). Indeed, "the fact that a decree or order is erroneous does not excuse disobedience on the part of those who were bound by its terms until [it] [is] reversed." *Id.*

Substantial evidence supports the circuit court's finding of contempt. The partition order was clear in its terms and express in its commands. It directed Potter to return the listed items of personal property within ten days. The court further ordered Potter to "put each item of personal property back to where it was" in the house and to "notify [Holmes] of the date and time of return delivery of the personal property." The court also required Potter to "prepare and provide in advance to [Holmes] a detailed, itemized list of all of the personal property which [Potter] is returning to the house and property [in Waldron]."

Potter did not return all the property listed in the partition order to the house in Waldron. He also did not provide an itemized list of the property he returned as the partition order clearly directed him to do. His long history of defying the court's orders, including those prohibiting him from interfering with Holmes's inventory of the trust property, supports the circuit court's determination that his disobedience was willful. *See Wright v. Nichols*, 80 F.3d 1248, 1252 (8th Cir. 1996); *see also Conlee v. Conlee*, 370 Ark. 89, 98, 257 S.W.3d 543, 551 (2007) (considering the contemnor's persistent disobedience of court orders on review of a finding of criminal contempt). Consequently, we hold that the contempt order entered on June 26, 2018, is supported by substantial evidence.

### III. *Conclusion*

Potter has failed to preserve the alleged evidentiary error for our review. The record does not demonstrate that Potter identified or offered the testimony he now claims the circuit court erroneously excluded. In addition, Potter's admission that he failed to provide a list of returned items as required in the partition order as well as his history of defying the circuit court's orders is substantial evidence supporting the finding of contempt.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Kevin L. Hickey*, for appellant.

*Skinner Law Firm, P.A.*, by: *Jack Skinner*, for appellee Cassaundra Holmes.