Christine M. JONES *v.* Jerry A. JONES

94-1088                                             898 S.W.2d 23

Supreme Court of Arkansas
Opinion delivered May 8, 1995

*The Perroni Law Firm, P.A.*, by: *Samuel A. Perroni* and *J. Nicole Graham*, for appellant.

*Helen Rice Grinder*, for appellee.

ROBERT L. BROWN, Justice. This case involves the parties' minor son, Cameron Jones, and the chancellor's dismissal of a contempt petition against appellee Jerry A. Jones for his failure to release Cameron on a certain date to appellant Christine Jones for visitation purposes. It further involves the constitutionality of alleged local rules employed by the chancellor and legal fees assessed against appellant Christine Jones for filing the contempt petition.

The parties were married in 1981 and divorced on November 13, 1990. The chancellor granted custody of Cameron to Christine Jones as part of the divorce. On December 14, 1992, a temporary change of custody was granted to Jerry Jones, and on March 7, 1994, the custody grant was made permanent with visitation rights provided to Christine Jones. The March 7, 1994 order expressly states that visitation shall be in accordance with the Handbook for Domestic Relations Litigants used by the Twentieth Chancery District of Arkansas which includes Faulkner, Van Buren, and Searcy Counties. The visitation language in the March 7, 1994 order that stands at the core of this lawsuit reads: "(d) the [appellant] shall have summer visitation with the minor child beginning on the third Sunday following the last day the child is required to attend school of the spring term. . . ." This

language is taken word-for-word from the Domestic Relations Handbook.

During the 1993/94 school year, Cameron as a four-year-old was not required by law to attend public schools. He attended a preschool in Conway named the UCA Child Study Center, and the last day of that school was May 13, 1994. On May 31, 1994, Christine Jones filed a motion for contempt against Jerry Jones for his violation of the March 7, 1994 order due to his refusal to release Cameron to her on May 29, 1994, which was the third Sunday following the last day of Cameron's preschool at the UCA Child Study Center. Jerry Jones responded that the last day of the Conway public schools was the operable date to be used because Cameron was not required to attend school and that date meant the third Sunday fell on June 12, 1994.

Following a hearing on Christine Jones's contempt motion on June 15, 1994, the chancellor dismissed the petition and granted Jerry Jones's request for attorney's fees in the amount of $650.

Christine Jones first contends that the chancellor abused his discretion in refusing to hold Jerry Jones in contempt. On *de novo* review, we disagree and hold that the result reached by the chancellor was correct but not for the reasons stated by the chancellor in open court.

Our standard of review when a chancellor has refused to punish an alleged contemnor is abuse of discretion. *Warren* v. *Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986). For a person to be held in contempt for violating a court order, that order must be clear and definite as to the duties imposed upon the party, and the directions must be expressed rather than implied. *Id.* A person cannot be held in contempt for failing to do something which the trial court did not order. *McCullough* v. *Lessenberry*, 300 Ark. 426, 780 S.W.2d 9 (1989); *Waldon* v. *Waldon*, 34 Ark. App. 118, 806 S.W.2d 387 (1991).

In the case at hand, the chancellor found no basis for contempt because when interpreting the required-school language in the Domestic Relations Handbook, the local practice had always been to rely on the public school schedule for determining the last day of school. We refuse to countenance this justification as a legitimate precept for interpretation. Local practices and local

interpretations work to the disadvantage of parties and attorneys outside of the district, the same as do local rules. *See In the Matter of the Adoption of Parsons*, 302 Ark. 427, 791 S.W.2d 681 (1990). We note as an adjunct to this point that this controversy could have been easily avoided had the parties used language specifically related to this case in the March 7, 1994 order rather than boilerplate language from the Domestic Relations Handbook. Also related to this point is the question of whether this matter is moot due to Cameron's change of schools. There was testimony from Jerry Jones that Cameron would be attending a different pre-school in the 1994-95 school year. But the record is not definite on whether this actually occurred so as to obviate the dispute before us in this appeal. We have opted, therefore, to consider the merits.

We conclude that the required-school language in the March 7, 1994 order is ambiguous. Christine Jones interprets those words as pertaining to the last day of the school Cameron actually attended. Jerry Jones, on the other hand, interprets them in accordance with the public school schedule since Cameron was not yet required to go to school. We believe that both interpretations are reasonable. Because the language at issue is imprecise and unclear, we affirm the chancellor's dismissal of the contempt motion.

Christine Jones next raises two points: (1) the chancellor erred in using local rules and local interpretations in this case, and (2) use of the Domestic Relations Handbook by the chancellor violates the doctrine of separation of powers in that it removes judicial discretion. Though local practice and interpretation of what is required school is more the issue here, we decline to entertain both issues because they are being presented for the first time on appeal. *See Bell* v. *Estate of Bell*, 318 Ark. 483, 885 S.W.2d 877 (1994). The appellant urges in contravention of this conclusion that she had no opportunity to raise these issues because reliance on the Domestic Relations Handbook and local practice first occurred in the chancellor's ruling and that in any event, this court reviews chancery matters *de novo* on appeal and, accordingly, can decide the questions.

The appellant, however, was well aware that the Domestic Relations Handbook was being used by the chancellor prior to

his ruling and order dismissing her contempt petition. The Handbook was expressly referenced in the March 7, 1994 order. It was also very much at issue when the question of required school was extensively debated at the contempt hearing on June 15, 1994. Indeed, the chancellor made reference to the fact that Christine Jones had known about the Handbook for two years. She also was aware that local practice was being used as an interpretative tool against her. The chancellor explained that fully at the hearing. Yet, she did not object.

In sum, at no point did she raise the two issues that she now presents to this court. *De novo* review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized. *Henry* v. *Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992); *Walker* v. *Walker*, 262 Ark. 648, 559 S.W.2d 716 (1978). In deciding these two issues as we do, we do not in any way intend to suggest that the Domestic Relations Handbook represented anything other than a local rule. *See In re: Changes to the Arkansas Rules of Civil Procedure and the Arkansas Rules of Appellate Procedure, Abolishment of the Uniform Rules of Circuit and Chancery Court, and Publication of Administrative Orders*, 294 Ark. 664, 742 S.W.2d 551 (1987). We simply do not reach these issues.

For her last point, Christine Jones urges that the award of sanctions under Ark. R. Civ. P. 11 was an abuse of the chancellor's discretion. We recognize the fact that chancery courts can and often do award attorney fees to the prevailing party. *See, e.g., Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986). We further are aware that the chancellor's order does not state for what reason he was granting Jerry Jones's request for attorney fees in the amount of $650.

Be that as it may, the events surrounding the fee award lead ineluctably to the conclusion that the award was in the nature of Rule 11 sanctions. For one thing, Jerry Jones expressly asked for attorney's fees as a Rule 11 penalty in his Response to Motion for Contempt. He also testified that the contempt hearing was "a form of harassment and needless cost of litigation." These are elements of a Rule 11 violation. He added that the hearing had inconvenienced him and caused him to miss the entire morning

at his office. He stated that the legal fees for the hearing would be for five hours at the rate of $125 an hour and that he was asking that Christine Jones pay that fee.

The chancellor in rendering his decision from the bench stated:

> Well, Ms. McNutt [appellant's counsel], if you had checked into this, . . . this hearing would never have been necessary. I've always been of the opinion that a local attorney has a very definite edge over an out-of-town attorney, because you know the local situations. I know that when I went out of town to court, if I didn't know the judge and know what was likely to be done, I always inquired of local attorneys what was going on, to make sure that I knew.
>
> We have used this standard, because it gives the greatest fairness to all of the parties. Next year, Dr. Jones could have had the child in some school that goes halfway through the summer, and thereby defeating Mrs. Jones' visitation. So, for that reason, unless there's some compelling reason to deviate, we've always used the public school year, just so the parties would know what to expect.
>
> Now, I have something that's even more — that bothers me, even more. Christine Jones testified that she had never seen that Blue Book [Domestic Relations Handbook]. This Court has personal knowledge of the fact that she has. Over two years ago — or, approximately two years ago, this Court put a sign on the outside of its office door — its chambers door stating Court Personnel Only. After this case was commenced, Christine Jones came through that, despite that sign, came into the office, and obtained a Blue Book. I did not personally talk with her, but I did see her when she did it. And, I discussed this, at a later time, with her attorney. . . .

A colloquy ensued among the chancellor, Christine Jones, and her counsel. The chancellor then concluded that the purpose of the sign on his door was to keep litigants out, and he announced that he was dismissing the contempt petition and awarding Jerry Jones $650 in attorney's fees.

Viewing these events in sequence, it is apparent that the

chancellor was sanctioning Christine Jones under Rule 11 for harassment and for increasing the cost of litigation. Both parties to this appeal seemingly agree because both couched their fee arguments in their briefs in terms of Rule 11 sanctions.

We conclude that granting the sanctions constituted an abuse of discretion, primarily for the reason already stated. Christine Jones's interpretation of the March 7, 1994 order was reasonable, if not prevailing. She surely had other avenues of relief apart from a contempt motion. But we discern no improper motives on her behalf or absence of a factual or legal foundation in making her motion. We, therefore, reverse the order with respect to the award of attorney's fees and remand for an order consistent with this opinion.

Affirmed in part. Reversed in part and remanded.