2013 Ark. App. 320
**Richie HARRAL, Appellant**

v.

**Kimbra Sue McGAHA, Appellee.**

No. CA 12–284.

Court of Appeals of Arkansas.

May 15, 2013.

Taylor & Taylor Law Firm, P.A., Little Rock, by: Tasha C. Taylor and Andrew M. Taylor, for appellant.

Bristow & Rchardson, P.L.L.C., by: Melissa B. Richardson, for appellee.

BRANDON J. HARRISON, Judge.

In the twelve-plus years since their divorce, Richie Harral and Kimbra McGaha have filed a steady stream of contempt motions and requests to modify the original decree. Richie filed this appeal after a two-day trial on the most recent round of petitions. We affirm.

The parties were married in 1995 and divorced in 2000. They had two children, a daughter C.H., born in 1992, and a son B.H., born in 1997. The divorce decree incorporated a child-custody and property-settlement agreement that contained the following clause in paragraph fourteen

> The parties will have joint custody and control of the minor children, with the Wife being the primary physical custodian. The parties will consult with each other regarding all major decisions in the children's lives, including, but not limited to the schools they are to attend and the medical care they are to receive. Either parent has access to all medical records reflecting medical treatment of the children.
>
> Each parent shall be empowered to obtain emergency health care for the children without consent of the other parent. Each party will immediately

advise the other when any child is ill, injured, or otherwise in need of professional health care.

In November 2009, the circuit court changed the 2000 divorce decree. The court found that Kimbra had tried to undermine and destroy Richie's relationship with the children. The 2009 order granted Richie full custody of twelve-year-old B.H., and allowed Kimbra standard visitation and "all other reasonable visitation." C.H., then age seventeen, remained in joint custody. She is now an adult; no issues on appeal involve her.

Soon after the 2009 order was entered, the parties filed a series of competing contempt and modification motions. Most pertinent to this appeal is Richie's 2010 allegation that Kimbra wrongfully allowed the children to associate with his former wife, Alyssa Reynolds, who had ridiculed and reviled him in text messages to C.H. and in the presence of both children. Kimbra's contempt petition alleged that, when B.H. was scheduled for a tonsillectomy in the summer of 2010, Richie prevented her from being with B.H. before the surgery and blocked access to his medical records. She also reasserted that Richie had refused to allow her reasonable, additional visitation since the change of custody.

The court's final order, dated 9 December 2011, ruled in Kimbra's favor. Richie has timely appealed that order; here he argues that the circuit court erred by

- Holding him in criminal contempt when the order he was accused of violating was not definite in its terms
- Modifying visitation to allow Kimbra additional time with B.H.
- Refusing to hold Kimbra in contempt based on B.H.'s cell-phone usage and
- Ordering him to pay Kimbra's attorney's fees.

## I.  Did the Court Err by Holding Richie in Contempt?

Richie and Kimbra learned during a consultation at a doctor's office that B.H. needed a tonsillectomy and that the asymmetry of the tonsils indicated the possibility of lymphoma. At the office's front desk, the receptionist asked Richie about a HIPAA form that he had filled out before the appointment. The form granted Richie, and his then-wife Megan, access to B.H.'s medical records but did not include Kimbra. When Kimbra asked to be placed on the form, Richie refused.

A tonsillectomy was scheduled in July 2010. Richie asked his lawyer to send a letter to the surgery center and to the surgeon's office stating that Kimbra would not be allowed into the pre-op area. On the day of surgery, Richie and Kimbra were in the waiting room when Richie told Kimbra that she could not go "back there" with B.H. before surgery. Kimbra complied, though she became upset. B.H. asked to see his mother while awaiting surgery. Richie told his son that he was a young man and needed to calm down.

According to Richie, he wanted to keep Kimbra out of the pre-op area because he "did not want there to be any drama." He also told the court about other instances of conflict with Kimbra. Richie testified that he considered it his right as the custodial parent to omit Kimbra's name from the HIPAA form and exclude her from the pre-op area.

The court held Richie in contempt for his actions surrounding B.H.'s surgery and medical records and took the unusual, but not unprecedented, step of telling Richie he could "purge" his contempt by performing twenty hours of public-service work. The court determined that Richie willfully violated paragraph fourteen of the original divorce decree and discredited Richie's

statement that he was trying to avoid drama. The court found that he intended to diminish Kimbra's involvement with B.H. while enhancing his own relationship with the child.

There are two parts to Richie's argument on why the court erred in holding him in contempt. First, he asserts that the circuit court held him in criminal, rather than civil, contempt. Second, he contends that the orders he was accused of violating were not sufficiently definite in their terms.

■ We agree with Richie that the circuit court held him in criminal, not civil, contempt. The essential difference is that criminal contempt punishes but civil contempt coerces. *Applegate v. Applegate*, 101 Ark.App. 289, 275 S.W.3d 682 (2008). The circuit court required Richie to perform twenty hours of community service. This sanction was not coercive because it did not induce Richie to comply with a court order. Richie was instead penalized for his disobedience. And he had to perform community service within a certain number of days and verify his completion of the service with the court. The court's statement that Richie could "purge" his contempt by performing the community service does not necessarily mean that the contempt finding was civil in nature. Richie was going to suffer the consequences of the court's sanction no matter what he did; he could not purge the contempt. The sanction therefore had a punitive, not coercive, aspect, and this is a hallmark of criminal contempt. *Ivy v. Keith,* 351 Ark. 269, 92 S.W.3d 671 (2002).

■ Our standard of review on this criminal-contempt issue is whether the circuit court's decision is supported by substantial evidence, viewing the evidence in the light most favorable to the circuit court's decision. *Kilman v. Kennard,* 2011 Ark. App. 454, 384 S.W.3d 647. Before Richie can be held in contempt for violating a court order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *See Holifield v. Mullenax Fin. & Tax Advisory Grp., Inc.,* 2009 Ark. App. 280, 307 S.W.3d 608.

■ Richie says the court erred because the 2000 divorce decree and the 2009 change-of-custody order are too indefinite to support a contempt finding. He specifically argues that paragraph fourteen of the 2000 divorce decree is ambiguous. He also reasons that, because the 2009 order gave him full custody of B.H., paragraph fourteen—which awarded the parties joint custody and provided for the sharing of medical information—was superseded.

We disagree that the court's 2009 change-of-custody order supersedes the medical provisions of the 2000 divorce decree. The 2000 decree provided in paragraph fourteen that the parties would share joint custody of the children, would consult with each other regarding all major decisions in the children's lives, including medical care, and that "either parent has access to all medical records reflecting medical treatment of the children." We see no inherent conflict with the court awarding full custody to one parent while requiring that both parents share medical information about their children. The 2009 order stated that "all other portions of the Decree not modified hereby or by previous order of the Court shall remain in full force and effect." The court did not, in the 2009 order, modify the medical-access provision contained in the 2000 decree. Nor did it make any rulings that inherently conflict with the medical-access provision.

■ The next question is: was the medical-access provision in paragraph fourteen too indefinite to be enforced? Richie has

cited cases where we have reversed contempt citations when a court's order is too indefinite. But in those cases the challenged order either (a) clearly failed to include the conduct for which the contemnor was held liable, (b) was vague and open-ended in its language, or (c) used terms that were subject to two reasonable interpretations. The medical-access provision of paragraph fourteen of the 2000 divorce decree is clearer than the orders Richie relies on. Paragraph fourteen directed the parties to consult with one another regarding their children's medical care and provided that either parent could have access to the children's medical records. The court ruled that Richie violated paragraph fourteen when he excluded Kimbra on the HIPAA form and prevented her from seeing their son in the pre-op room. This finding was not supported by substantial evidence. So the circuit court did not err in holding Richie in criminal contempt for denying Kimbra access to their son's medical records and refusing to let her be with him just before surgery. *See Terry v. White*, 374 Ark. 366, 288 S.W.3d 194 (2008) (finding court order to be clear and definite in its terms).

Because we affirm the circuit court's decision to hold Richie in criminal contempt for violating the 2000 divorce decree, we need not reach Richie's argument on whether the court erred in holding him in contempt of the 2009 order.

## II. Did the Court Err in Modifying Visitation?

When the court gave Richie custody of B.H. in 2009, it awarded Kimbra visitation with B.H. on alternate weekends, Wednesdays from 5:00 p.m. until 8:00 p.m., and various holidays, birthdays, and school breaks. The 2009 order provided that this "minimum visitation" would be in addition to all other "reasonable visitation."

Since gaining primary custody of B.H., Richie has not allowed Kimbra to visit B.H. other than on days specifically set out in the 2009 custody order. This was true even when Richie would leave town, in which case his mother or other caregivers would watch B.H. When Kimbra requested additional visitation during these times, Richie refused and had his attorney send a letter stating that her requests for visitation were harassment and that Richie would not respond to further requests for additional visitation.

Kimbra testified at trial that she had asked Richie if she could keep B.H. on snow days or while Richie was out of town, such as when he went on a cruise. Richie testified that he did not consider it reasonable to give Kimbra additional visitation because she had tried to destroy his relationship with his children in the past. He also noted that, when B.H. returned home after visiting Kimbra, B.H. was often moody for two to three hours, sometimes one to two days. Richie acknowledged, however, that Kimbra had not said anything bad about him to B.H. since the last court hearing. Richie further testified that B.H. had been looked after by his mother or other adults when he was away from home. He said, however, that he was no longer married to Megan and that his mother could no longer keep B.H. due to her health problems.

After hearing the parties' testimony, the court modified the 2009 order to allow Kimbra visitation with B.H. when Richie was absent more than 24 hours. The court reasoned that Richie intended to refuse any additional visitation requested by Kimbra, Richie's mother was unavailable as a caregiver, Richie had returned to single-parent status, and Kimbra had eliminated conduct that led to the 2009 order. The court also stated that it could understand Richie's point of view to some extent

but that his behavior was inconsistent with the 2009 order's provision that Kimbra's specific visitation days were the minimum amount. The court observed that there was no evidence that Kimbra had acted to undermine Richie's relationship with B.H. during the visitations.

A circuit court has continuing jurisdiction over visitation and may modify or vacate a visitation order when it becomes aware of a change in circumstances or facts not known to it when the initial order was entered. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. Although visitation is always modifiable—to promote stability and continuity for the children and to discourage repetitive litigation—courts impose a more rigid standard for modification than for initial determinations. *Id.* So a party seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants a change. *Id.* The primary consideration regarding visitation is, however, the best interest of the child. *Id.* Though we consider the evidence de novo, we will not reverse the court's findings unless they are clearly erroneous. *Williams v. Ramsey*, 101 Ark.App. 61, 270 S.W.3d 345 (2007).

Here, Richie claims that there was insufficient evidence of a change of circumstances warranting modification and that the court erred in considering Kimbra's alleged improved behavior because "a change in the circumstances of the noncustodial parent does not constitute a material change in circumstances." True, a change in circumstances of a noncustodial parent, standing alone, does not justify a change of custody; but the change in circumstances of a noncustodial parent can be considered. *Walker v. Torres*, 83 Ark. App. 135, 118 S.W.3d 148 (2003). The circuit court did not commit a reversible error in finding that circumstances had changed: B.H. no longer had an adult, related to him by blood or marriage, to look after him when his father was away. And Richie's refusal to allow B.H. to stay with his mother during these times, especially given the "additional, reasonable visitation" language in the court order, could reasonably be viewed as a failure to foster B.H.'s relationship with his mother. This is especially so given that the court expressly encouraged the parties in an earlier ruling to work together to provide additional reasonable visitation. Richie's pattern of refusing all requests for additional visitation may be considered a material change of circumstances. *See Sharp v. Keeler*, 99 Ark.App. 42, 256 S.W.3d 528 (2007). No giant leap was made in any event. The court's modification was slight, allowing Kimbra to exercise additional visitation only when Richie was not home with B.H. for more than 24 hours. And Richie admitted at trial that he was rarely away from home for any length of time. On the whole, we cannot say that the circuit court clearly erred.

### III. *Did the Court Err in Failing to Hold Kimbra In Contempt?*

Because Richie had been the victim of some damaging cell-phone communications between Alyssa Reynolds and C.H. before 2009, he was concerned about B.H.'s use of a cell phone. So the 2009 change-of-custody order said that Kimbra must refrain from "purchasing or allowing [B.H.] to possess any cell phone" other than one provided by Richie.

Richie argues on appeal that Kimbra knowingly violated the court's order to refrain from providing B.H. with a cell phone and that the court erred by not holding Kimbra in contempt. We review a circuit court's refusal to punish an alleged contemnor for an abuse of discretion. *Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995). A circuit court abuses its dis-

cretion when it acts thoughtlessly and without due consideration. *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, at 6, 425 S.W.3d 795, 800.

There was no abuse of discretion. The circuit court received testimony about thirteen-year-old B.H.'s occasional use of a cell phone for purposes of safety and to call his father. Kimbra allowed B.H. to use a cell phone in technical violation of the court's order. But the use was limited, no harm came of it, and she stopped providing the phone to B.H. in August 2010—more than a year before the court entered its December 2011 order. Under these circumstances, the circuit court did not act thoughtlessly and without due consideration by refusing to hold Kimbra in contempt.

### IV. *Did the Court Err In Awarding Attorney's Fees?*

 The court ordered Richie to pay Kimbra an attorney's fee of $5,000. The award was based on the parties' disparity in income, the relative merits of their claims, and Kimbra's having prevailed on significant issues. Richie argues that we must reverse the circuit court's fee award to Kimbra because the court made the wrong decision on the merits of Richie's claims. Richie also cites *Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995), saying an attorney's fee is unsupportable because "the order on which the petition for contempt was based was ambiguous."

■ The circuit court did not abuse its discretion by awarding Kimbra attorney's fees. A circuit court has the inherent power to award attorney's fees in a domestic-relations case, and we review a court's fee award for an abuse of discretion. *Tiner v. Tiner*, 2012 Ark. App. 483, at 15, 422 S.W.3d 178, 187. The court did not act thoughtlessly when it awarded a $5,000 attorney's fee in this case. The *Jones* case

does not require us to reverse because, as we held earlier, the court did not err in its criminal-contempt finding.

Affirmed.

GRUBER and BROWN, JJ., agree.