

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-122

| | |
|---|---|
| MOUNTAIN PURE, LLC d/b/a MOUNTAIN PURE WATER COMPANY; MOUNTAIN PURE MS, LLC; MPAR, LLC; MPMS, LLC; MOUNTAIN PURE HOLDINGS, LLC; and JOHN B. STACKS<br><div align="right">APPELLANTS</div><br>V.<br><br>CLEAR WATER HOLDINGS, LLC, AS SUCCESSOR IN INTEREST TO SIMMONS FIRST NATIONAL BANK<br><div align="right">APPELLEE</div> | **Opinion Delivered** November 9, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-14-1104]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellants, Mountain Pure, LLC d/b/a Mountain Pure Water Company; Mountain Pure MS, LLC; MPAR, LLC; MPMS, LLC; Mountain Pure Holdings, LLC; and John B. Stacks,[1] appeal the Pulaski County Circuit Court's order denying their petition for contempt filed against appellee Clear Water Holdings, LLC, as successor in interest to Simmons First National Bank. We affirm.

Appellants' petition for contempt arose out of a foreclosure action. Simmons First National Bank initiated the action on March 17, 2014, by filing a complaint to foreclose its mortgages and security interests in certain real and personal property secured by loans

---

[1]Stacks is the manager of Mountain Pure Holdings and the sole member of MPAR, LLC, and MPMS, LLC.

Simmons made to appellants. On April 16, 2014, the circuit court entered a consent order appointing Michael McAfee as receiver to preserve the property by managing the Mountain Pure entities.

On September 22, 2014, Simmons and appellants executed a settlement agreement and mutual release of claims and security interests, which, pertinent to this appeal, included the following provision:

> 5. <u>Information for Preparation of Mountain Pure Entities Tax Returns.</u>
>
> Within 30 days of the date of this agreement, the Receiver shall in the ordinary course of its business provide a copy of all information from the Mountain Pure MAS-90 computer system in Little Rock, Arkansas to enable the Mountain Pure Entities to prepare and file tax returns for the year 2013 and the partial year 2014 through September, 2014. After the Receivership is concluded, Simmons and the Receiver shall turn over the actual hard drive(s) and computer towers[2] that contain the hard drives to the Stacks Parties. Simmons and the Receiver have no responsibility in this regard other than providing copies of information on the computer system, and the Stacks Parties have no right or claim to any information of the Mountain Pure Entities on the computer system except as set forth in this paragraph.

A foreclosure decree was entered on September 24, 2014; the Little Rock Mountain Pure plant was sold at a foreclosure sale on October 16, 2014, to Clear Water Holdings, LLC; an order confirming the sale was entered on October 21, 2014; and Clear Water Holdings was subsequently substituted as the proper party plaintiff.

On January 9, 2015, McAfee delivered one computer tower, the main file server containing the MAS-90 system, to appellant Stacks; however, Stacks claimed that there was no data on the tower. McAfee claimed that his delivery of the computer tower with the MAS-90 system satisfied the terms of the settlement agreement.

---

[2]At issue were two computer towers: (1) the main file server, which included the MAS-90 (accounting) system; and (2) the terminal server.

On February 26, 2015, appellants filed a motion for emergency relief to enforce settlement, and later, on March 26, 2015, filed an amended motion. Although Stacks had possession of the computer tower containing the MAS-90 system, he requested that McAfee be ordered to immediately turn over the computer towers containing the hard drives and that nothing be removed from the hard drives and computer systems, particularly the MAS-90 system. Appellants claimed that the data on the hard drives was extremely important to prepare their taxes and to seek funding for continuing businesses.

A hearing was held on appellants' motion for emergency relief on April 1, 2015. On April 13, 2015, the circuit court entered an order providing, "Immediately upon the conclusion of the Receivership, the Receiver shall turn over and surrender the remaining computer towers and hard drives from the Mountain Pure facility to John Stacks. The Receiver shall not delete or remove any data, software or anything else from said hard drives."

On May 6, 2015, McAfee delivered a second computer tower to appellants—the terminal server; however, Stacks claimed that data had been deleted from the hard drive. As a result, on May 15, 2015, appellants filed a petition for contempt against McAfee.

At the contempt hearing on August 3, 2015, Stacks testified that on May 6, 2015, McAfee delivered a computer tower; however, data on it had been deleted. Stacks testified that he hired Tracy Bush, a former employee, and Gordon Bond, a computer expert, who both confirmed that the data had been deleted. Stacks stated that two weeks prior to the contempt hearing, on July 21, 2015, McAfee delivered a USB drive containing 300GB of data. Stacks further testified that he had been trying to obtain the computers and the data thereon since

September 2014 and that he desperately needed it to file his taxes and to secure loans for his other businesses. He claimed that the ordeal had caused him considerable trouble and expense.

Tracy Bush testified that the computers delivered by McAfee in January (the main file server) and May 2015 (the terminal server) had no data. Gordon Bond, service manager of The Computer Works, testified that he had been retained by Stacks to examine the terminal server Stacks received from McAfee on May 6, 2015. Bond's examination revealed that data had been deleted from the terminal server on May 5, 2015, the day before it was delivered. Bond further stated that the 300GB of data on the USB drive that was provided by McAfee in July 2015 was not data from the terminal server.

Marvin Bonney worked for a computer-networking company that was hired by Clear Water Holdings. He testified that in January 2015 he was asked to "decommission" the main file server and replace it with another server. He said that he was told by McAfee not to compromise the MAS-90 system or its data but to remove all remaining data—300GB—from the main file server. Bonney copied the 300GB of data to a USB drive and then deleted that data from the main file server before it was delivered to Stacks. Bonney testified that he was later asked by McAfee to remove the terminal server from the network so that it could be delivered to Stacks. Bonney was told not to delete anything from the terminal server; however, he did delete user names, files, and data of hackers that he claimed compromised the server.

McAfee testified that it was his understanding based on the settlement agreement that he was to deliver a copy of the MAS-90 system and its data from the main file server to appellants so they could prepare their tax returns. He said that he did that in January 2015. McAfee stated that he did not believe that he was obligated, pursuant to the settlement

agreement, to provide appellants any other data from the main file server or the server itself until the end of the receivership. Nevertheless, he testified that the data deleted from the main file server was delivered to Stacks in July 2015. McAfee conceded that at the April 2015 hearing he did not report to the circuit court that he had caused data from the main file server to be deleted in January 2015. However, he testified that he complied with the April 2015 order when he delivered the remaining server—the terminal server—to Stacks in May 2015. He testified that to his knowledge there was no usable data on the terminal server that had been deleted prior to its delivery.

Johnny Pabian testified that he is the owner of Pabian Partners, a SAGE[3] software reseller. He stated that on January 19, 2015, he met with Tracy Bush, who had possession of a working copy of the MAS-90 system. Pabian testified that he and Bush accessed all the data available on the MAS-90 system, including income statements, revenue and expense statements, balance sheets, a general-ledger module, accounts receivable, and spreadsheets.

From the bench, the circuit court, on multiple occasions, voiced its dissatisfaction with McAfee's conduct. The court noted that McAfee failed to disclose at the April hearing that he had caused data to be deleted from the main file server before it was delivered to Stacks. It noted that McAfee delivered the terminal server that had data deleted from it as well. The court stated that McAfee "poured jet fuel on a fire that had been burning for a year with Mr. Stacks." While the court stated that it was not concerned that McAfee deleted anything of "great importance," the court stated that McAfee added "further suspicion," "distrust," "ill-

---

[3]SAGE was formerly known as MAS-90.

will," and "animosity to a bad situation." Before taking the matter under advisement, the circuit court stated, "Mr. McAfee, you may not have violated any rules, but you played in a manner that I'd call chicken manure." The court said that McAfee's conduct left a "very bad taste in my mouth today after having heard all of this. It makes me very unhappy."

On January 6, 2016, the circuit court issued a letter ruling:

> I have had an opportunity to fully review and consider your respective letters and briefs regarding Mr. Stacks's contempt motion against Mr. McAfee. While I do not necessarily agree with every action taken by Mr. McAfee in his capacity as receiver, I do not find that his actions rise to the level of contemptible conduct. Therefore, Mr. Stacks's contempt motion is denied and no damages are awarded. Each party shall bear their own fees and costs in connection with this particular motion.

On January 12, 2016, the circuit court entered an order denying the petition for contempt. This appeal followed.

We review a circuit court's refusal to punish an alleged contemnor for an abuse of discretion. *Harral v. McGaha*, 2013 Ark. App. 320, at 10, 427 S.W.3d 769, 775 (citing *Jones v. Jones*, 320 Ark. 449, 451, 898 S.W.2d 23, 24 (1995)). A circuit court abuses its discretion when it acts thoughtlessly and without due consideration. *Harral*, 2013 Ark. App. 320, at 10, 427 S.W.3d at 775–76.

Appellants argue that the circuit court abused its discretion in denying their petition for contempt based on the undisputed facts that McAfee

1. Directed that all of the data from the main file server, except the MAS-90 system and its data, be deleted before the main file server was delivered to Stacks in January 2015.
2. Did not report to the parties or the court at the April 1, 2015 hearing on appellants' motion for emergency relief to enforce the settlement agreement that in January 2015 he had ordered that all data, other than the MAS-90 system and its data, be deleted from the main file server.
3. Delivered the terminal server to appellants on May 6, 2015, yet some data from that server had been deleted the day before.

Appellants further rely on many of the circuit court's comments following the contempt hearing, wherein it voiced its strong dissatisfaction with McAfee's conduct.

A contempt proceeding is a cause of action to enforce valid orders of a court. *Davenport v. Uselton*, 2013 Ark. App. 344, at 3. Contempt is a matter between the judge and the litigant and not between the two opposing litigants. *Id.* In order to establish contempt, there must be willful disobedience of a valid order of a court. *Lone v. Koch*, 2015 Ark. App. 373, at 14, 467 S.W.3d 152, 160. For a person to be held in contempt for violating a court order, that order must be clear and definite as to the duties imposed upon the party, and the directions must be expressed rather than implied. *Jones*, 320 Ark. at 451, 898 S.W.2d at 24. A person cannot be held in contempt for failing to do something which the circuit court did not order. *Id.*, 898 S.W.2d at 24 (citing *McCullough v. Lessenberry*, 300 Ark. 426, 780 S.W.2d 9 (1989); *Waldon v. Waldon*, 34 Ark. App. 118, 806 S.W.2d 387 (1991)).

The order that appellants contend McAfee violated is the April 13, 2015 order, which stated:

> Immediately upon the conclusion of the Receivership, the Receiver shall turn over and surrender the remaining computer towers and hard drives from the Mountain Pure facility to John Stacks. The Receiver shall not delete or remove any data, software or anything else from said hard drives.

The language of this order—drafted by appellants' counsel—is clear and unambiguous. McAfee was required to turn over the remaining computer, the terminal server, to Stacks *after* the receivership had been concluded. The receivership was terminated on September 10, 2015. Nevertheless, it is undisputed that prior to the conclusion of the receivership McAfee delivered the terminal server, and he delivered the 300GB of data that had been removed from the main

file server. Therefore, McAfee not only complied with the specific requirements of the order, he provided more information than was required and he did so prior to the time period stated in the order. Accordingly, we hold that the circuit court did not abuse its discretion in finding that McAfee did not willfully violate the order.

We acknowledge that McAfee directed that all of the data from the main file server, except the MAS-90 system and its data, be deleted before the main file server was delivered to Stacks in January 2015. It is also true that McAfee did not report either to the parties or to the court at the April 1, 2015 hearing that he had deleted that information from the main file server. However, those are matters that took place prior to the entry of the April 13, 2015 order; thus, they cannot constitute evidence of a willful violation of that order.

We further acknowledge that after the April 13, 2015 order had been entered, McAfee delivered the terminal server to Stacks and that some data from that server had been deleted from the server the day before delivery. However, the evidence presented supports the circuit court's finding that McAfee's actions in this regard did not rise to the level of contemptible conduct. Bonney testified that McAfee said *not* to delete anything from the terminal server before it was delivered to Stacks. Bonney testified as follows:

> To the best of my memory, when I was asked to make the terminal server ready, I was not told to delete anything or just—it was just get it off the network so that we can give it to Mr. Stacks.[4] When I got to the server, I determined it had been compromised by outside people—hackers, essentially—within the last several days. I dumped all of those user profiles from the hackers into the recycle bin and spent a lot of time changing passwords and locking the system back down to where that it could be usable . . . [I] deleted the data [the hackers] had placed on the server. . . . I . . . didn't delete any—any data, any spreadsheets, things like that.

---

[4]In contrast, Bonney testified that McAfee directed him to delete all data, except for the MAS-90 system and its data, from the main file server.

The circuit court could conclude from Bonney's testimony that McAfee did not order Bonney to delete data from the terminal server. To the contrary, McAfee ordered Bonney to remove the terminal server from the network so it could be delivered to Stacks. McAfee testified that to his knowledge there was no usable data on the terminal server that had been deleted prior to its delivery to Stacks. Under these facts McAfee's conduct could, at most, rise to the level of negligence for unknowingly delivering the terminal server that had some data deleted. We cannot say that such conduct rises to the level of willful contempt.

A circuit court abuses its discretion when it acts thoughtlessly and without due consideration. Here, it is clear that at the conclusion of the contempt hearing the circuit court was displeased with McAfee's conduct. However, the court took the matter under advisement and, after careful consideration of the entire record, concluded that McAfee's actions did not rise to the level of contemptible conduct. Based on the language of the April 13, 2015 order, along with the evidence in this case, we cannot say that the court abused its discretion. We affirm.

Affirmed.

KINARD and GRUBER, JJ., agree.

*Gibson Law Office*, by: *Chuck Gibson*, for appellants.

*Quattlebaum, Grooms & Tull PLLC*, by: *Geoffrey B. Treece*, for appellee Michael McAfee.