Cite as 2021 Ark. App. 114

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-542

| | | |
|---|---|---|
| DAVID EVERSOLE | | **Opinion Delivered** March 10, 2021 |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63DR-16-61] |
| V. | | |
| RITA EVERSOLE | APPELLEE | HONORABLE KENNETH CASADY, JUDGE |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

David Eversole appeals from the Saline County Circuit Court's order denying his motion for a change in custody as well as his motions for contempt and modification of child support. Eversole also appeals the circuit court's attorney-fee award to appellee Rita Eversole (now Miller). We previously ordered rebriefing due to deficiencies in Eversole's abstract. *Eversole v. Eversole*, 2020 Ark. App. 387. The parties have now submitted substituted briefs. We affirm.

The parties have one daughter, PE, who was born in 2010. They divorced in the state of Georgia in 2012. In conjunction with the divorce, the court entered a "parenting plan" wherein the parties agreed on custody, visitation, and child support. The agreement provided for joint legal custody with Miller as the primary physical custodian. The agreement contemplated Miller and PE relocating to Arkansas and granted Eversole four days of visitation each month in addition to other holiday and summer visitation. The

agreement also gave both parents unlimited telephone access to PE for reasonable lengths of time.  In March 2014, Eversole filed a petition to register the Georgia decree and parenting plan in the Polk County Circuit Court and sought to modify the parenting plan.  He requested that he be granted custody of PE for at least one half of the year until she starts school.  In December 2014, the Polk County Circuit Court entered an order finding that Eversole had failed to provide sufficient evidence of a material change in circumstances.  However, the court did modify his child support and summer visitation, and it ordered that the parties set a schedule for video calls with PE three times a week.  Eversole appealed, and this court affirmed the circuit court's order.  *Eversole v. Eversole*, 2015 Ark. App. 645, 476 S.W.3d 199.

In early 2016, the case was transferred to Saline County due to Miller's relocation there, and Eversole filed a motion to modify the decree and a motion for contempt.  He alleged that Miller had violated provisions of the parenting plan regarding joint decision-making, had interfered with his FaceTime video calls with PE, and had refused to coparent with him.  He also alleged that he was entitled to a modification of his child support and to relief regarding his obligation to provide insurance for PE.  The parties attended mediation in December 2016 and entered into a memorandum of understanding.  Per the memorandum, Eversole's FaceTime visitation was scheduled to take place on Mondays, Wednesdays, and Saturdays at 6:00 p.m. for up to one hour unless ended earlier by PE.

In January 2017, Eversole filed a motion for change of custody and a motion for contempt, which expanded on the allegations in his prior motion.  A temporary order was entered in June 2017 providing that PE receive counseling, changing summer visitation,

2

and ordering that phone contact continue per the memorandum of understanding. Eversole filed an amended motion for change of custody and motion for contempt in May 2018 again making substantially similar allegations. Eversole also filed a motion for a reduction in child support requesting either a reduction or, alternatively, a termination of his child support due to his monthly visitation expenses.

The final hearing was held in January 2019. Eversole testified that communication had always been a problem since the divorce. He communicates with PE primarily through FaceTime video calls, and he communicates with Miller almost exclusively through text messages. Eversole said that he kept a copy of every text message between him and Miller and had provided them during discovery. He said that he had recorded every FaceTime with PE "because she is exhibiting a lot of concerning behaviors and it has been my hope that [Miller] would discuss these issues with me." He said that the current problem, which started after mediation, was PE's hanging up on him.

During his testimony, Eversole played audio and video clips from his FaceTime recordings.[1] He said that prior to March 2016, Miller would hold the iPad for PE's FaceTime calls, and Miller would often not like something he said and terminate the call. Seven clips were played from calls in 2015 when PE was four and five years old. The calls ended abruptly when Miller either terminated them herself or prompted PE to terminate the calls. In one call, Miller tells PE to tell Eversole that a bear he sent her was stiff and

---

[1]Before the first clip was played, the attorney ad litem noted that the clips Eversole planned to play had been cut down significantly from the full videos produced in discovery. The attorney ad litem stated that in his opinion, the portions that were cut were not favorable to Eversole. The court responded that it would take that into account.

3

scratchy. After Eversole tells PE, "I don't know why your mom is being like this," Miller terminates the call. In other calls, arguments ensue after Eversole asks PE why she is being weird and when Miller requests that he change the subject because he is upsetting PE. Eversole introduced text-message exchanges that occurred after these calls in his attempts to resolve the situation, but the texts usually ended in an argument and Miller not responding to requests to restart the call. He said that he believed Miller was trying to alienate him from PE.

Eversole testified that after the memorandum of understanding, his calls were made without Miller in the room with PE. He played five clips from calls in 2017 in which PE hangs up on him. In texts, he asks Miller to have PE restart the call, but Miller states that PE says she is done talking and has the right to end calls per the memorandum of understanding. Eversole testified that he does not have a problem with PE ending calls early, but he wants her to be respectful and not just hang up on him. He was concerned that because Miller would refuse to restart the calls or discuss the situation with him afterwards, he was unable to address problematic behavior with PE until several days later. On cross-examination, Eversole acknowledged that PE got upset in some of the video clips he played, but he denied any blame for that. During the attorney ad litem's cross-examination, a longer version of a clip from Eversole's direct examination was played in which, prior to Miller's prompting PE to terminate the call, PE tells Eversole that she is tired of talking, and Eversole tells PE that she hurt his feelings.

Eversole testified that before calls were scheduled, he would text Miller when he wanted to FaceTime, and she, at times, would not respond for up to five days. Eversole

4

introduced into evidence a chart he made documenting every day he requested to speak to PE and whether the request was granted. He calculated the number of times he was denied three calls a week as ordered by the Polk County Circuit Court. He claimed that there were twelve violations in 2015, twelve violations in 2016, seven violations in 2017, and one violation in 2018. He acknowledged that it had gotten better, partly because PE no longer needs supervision during the calls. Other communication problems he testified to included Miller's refusing to reschedule calls after he had car trouble and when he was traveling for a deposition in the case, refusing to supply her husband's phone number, failing to have the iPad sufficiently charged, and refusing to allow his family members to communicate with PE outside of his scheduled calls. Eversole also testified that Miller failed to consult him regarding enrolling PE in schools and extracurricular activities; failed to timely notify him that PE was being bullied at school; failed to timely notify him that PE had strep throat; and failed to include him in a doctor's appointment. He said that Miller had refused his requests to be on speakerphone while she met with PE's teacher, the school principal, and her doctor.

Miller testified that the majority of the texts where she failed to respond to Eversole's repeated requests for calls with PE were from many years ago when things were "extremely tense." She agreed that it was not appropriate for her to disconnect the calls in some of the videos. She said that her communication with Eversole had improved since calls were scheduled, but she cited the threat of constant litigation and Eversole's recording as continuing impediments to a healthy relationship. Miller believed that PE should be able to end the calls when she wants because in the past PE had become very upset by them; Miller believed that Eversole badgered PE and should instead change the subject. Miller

5

said that she had not been a witness to PE's hanging up on Eversole except for one call that took place in her car, but she said that she had spoken with PE about nice ways to end the conversation and had suggested that Eversole and PE see a counselor. She believed that the length of the calls was part of the problem. She never saw the videos prior to their being produced in discovery. Miller denied refusing Eversole access to any school or medical records. In 2018, unlike in prior years, they attended a parent–teacher conference together, and Miller attended the birthday party Eversole threw for PE. Eversole said that both events went "great." Eversole also attended PE's consultation at an orthodontist's office on speakerphone.

Eversole's wife, Kim, testified that she had become concerned with PE's behavior because "we'll be having a great time and then she gets upset" and calls herself names. Kim said that after PE takes some time to herself, she usually comes back okay. She also said that PE seems very angry at family members and that PE did not perceive Kim and Eversole as her parents. She agreed that PE should have an evaluation for counseling.

The attorney ad litem recommended that custody remain with Miller. He stated that Eversole's arguments that Miller had tried to alienate him from PE were refuted by the fact that Eversole and PE have a very good relationship. He acknowledged that the parties' communication needs a lot of work, but he did not believe it had affected PE at this point. He recommended that the parties be ordered to continue in coparenting counseling that they began with Jennifer Caldwell in the fall of 2018 and that PE be assessed for counseling. The attorney ad litem agreed with Caldwell's recommendation that PE be given her own phone for calling and texting family members, and instead of scheduled one-hour calls three

times a week, she could have more frequent contact with Eversole and his family but for shorter durations. He also recommended that the parties' communication be through a phone app that records when messages are sent, read, and responded to and that Caldwell be given access to their communications.

The circuit court denied Eversole's motions for a change of custody, for contempt, and for modification of his child support.[2] Both parties filed motions for attorney's fees, and the court awarded Miller $45,000 in attorney's fees and costs. Eversole appeals both orders of the circuit court.

## I. *Child Custody*

In order to change child custody, the circuit court must first determine that a material change of circumstances has occurred since the last order of custody; if that threshold requirement is met, the court must then determine who should have custody with the sole consideration being the best interest of the child. *Lowder v. Gregory*, 2014 Ark. App. 704, 451 S.W.3d 220. In reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.* We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id.* This deference is even greater in cases involving child custody as a heavier burden is placed on the circuit court to use the fullest extent of its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

---

[2]Testimony regarding child support and other matters is addressed below.

The circuit court denied Eversole's motion for a change in custody upon finding that he had failed to provide sufficient evidence that a material change in circumstances had occurred. The court specifically found that there was no evidence that any of Eversole's physical visitation was denied and that the difficulties in scheduling FaceTime calls did not rise to the level of a material change in circumstances. The court found that there was no evidence to support a claim for parental-child alienation because the testimony of both parties revealed that Eversole enjoys a good relationship with PE. The court found that the videos played by Eversole were more damaging to his case than helpful and demonstrated that his conduct contributed to communication problems with PE. The court found Miller's testimony credible and adopted the ad litem's recommendations regarding counseling, the parties using an app for communication, and PE having her own phone for communicating with Eversole.

Eversole argues that the court's finding that there was no material change in circumstances is clearly erroneous due to Miller's refusal to coparent with him and her violations of the parenting plan. The majority of Eversole's argument focuses on Miller's interference with his FaceTime calls. He claims that Miller's actions violated the provision of the parenting plan that states each parent shall encourage PE to develop a close and nurturing relationship with the other parent and refrain from conduct that may undermine a positive relationship. He argues that the video clips showed a continuing pattern of disrespect to him that has resulted in alienation. He also points to the thirty-six weeks over four years in which he did not receive all three of his calls and the instances in which Miller refused his requests to speak with PE for days. He notes that Miller did not dispute his

8

testimony that he allows Miller to have unlimited contact with PE when she is in his custody.

Eversole also points to the provision in the parenting plan providing that the parents shall engage in joint decision-making in all matters affecting PE's welfare including choice of schools, activities, and medical treatment. The provision states that the parties shall attempt to make mutual decisions, but if they cannot agree, Miller shall have final decision-making authority. Eversole argues that Miller did not consult with him prior to placing PE in several daycares, schools, sports, and activities and did not readily provide information he requested. The parenting plan also calls for prompt notification of illness, but Eversole argues that Miller delayed in notifying him that PE had strep throat, that she was taking a prescription allergy medication, and of a doctor's appointment.

Eversole claims that this case presents essentially the same facts as in *Grindstaff v. Strickland*, 2017 Ark. App. 634, 535 S.W.3d 661, in which this court affirmed the circuit court's finding of a material change in circumstances and changed custody. The circuit court in *Grindstaff* cited a cumulative effect of its concerns including Ms. Grindstaff's rigid imposition of times for visitation exchanges, her failure to show Mr. Strickland as a parent on school forms, her failure to always follow their previous agreement to jointly decide certain matters concerning the children, her suggestion that he give up his parental rights, and her "miserable job" of communicating with him. Eversole argues that Miller's repeated attempts to alienate PE from him by interfering with and denying his communication with

9

her, refusing to coparent, and refusing to include him in decisions affecting PE amount to a cumulative effect sufficient to constitute a material change in circumstances.[3]

Miller argues that her conduct did not demonstrate an intentional course of conduct to disrupt Eversole's relationship with PE even though she was not perfect in her communication or application of the parenting plan. She contends that, as in *Grindstaff*, the circuit court's ability to judge the behavior, tone, and demeanor of the parties should be granted great deference. She notes that the circuit court found that Eversole's behavior in some of the videos was poor. Further, although he testified that the purpose of the recordings was so she could aid in coparenting, Miller testified that he had not shared the videos with her until they were produced in discovery. She argues that their coparenting relationship has been hindered by the continued litigation, as testified to by their coparenting counselor.

We agree with Eversole that Miller's behavior in some of the 2015 videos was not conducive to nurturing a positive relationship with PE. However, those calls took place nearly four years prior the final hearing. Miller did not participate in the calls after March 2016. Eversole testified that most of the videos of him and PE are "pretty friendly" and

_____

[3]Eversole argues that Miller's violations of the parenting plan constitute a material change in circumstances pursuant to Arkansas Code Annotated section 9-13-101 (Supp. 2019). That statute provides in part that if a circuit court finds by a preponderance of the evidence that one parent demonstrates a pattern of willfully creating conflict in an attempt to disrupt a joint-custody arrangement, the circuit court may deem such behavior a material change of circumstances and may change a joint-custody order to an order of primary custody to the nondisruptive parent. Ark. Code Ann. 9-13-101(b)(1)(A)(iii). However, the statute also states that as used in the statute, "joint custody" means the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court. Ark. Code Ann. § 9-13-101(a)(5). Accordingly, the statute does not apply here where the parties shared only joint legal custody.

10

that they play together and "it is like we are in the same room." Although he said that the issue of PE's hanging up on him was still occurring, this is an issue that had only briefly been addressed in counseling before, and the court ordered that PE again be assessed for counseling. Further, in its oral ruling, the court faulted Eversole's tone and the manner in which he demanded PE talk to him in some of the videos. The court admonished him for bringing his "hurt feelings" into the conversations with PE. Regarding the frequency with which Eversole was allowed to communicate with PE, Eversole testified that for the most part, he gets his communications. The early text messages showed that the parties had major difficulties in agreeing on when to FaceTime, but Miller said that this improved after a schedule was made. Eversole's exhibit confirms this, showing just seven weeks in which he missed a FaceTime in 2017 and just one week in 2018.

Other evidence did show that Miller did not always consult Eversole before enrolling PE in schools and activities. However, the court did not find that this rose to the level of a material change in circumstances. The attorney ad litem stated that the parties' communication problems had not affected PE. Some communication had actually improved in the months leading up to the final hearing with the parties both attending a school conference, a birthday party, and an orthodontist appointment. The court sought to continue to improve the relationship by ordering the parties to see a coparenting counselor.

It is not our role to conduct a trial de novo and to consider questions of fact and issues of law as if there had been no trial. *Grindstaff*, *supra*. The circuit court was required to weigh the conflicting evidence, and there are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as

11

those involving minor children.  *Id.*  We hold that the circuit court's ruling was not clearly erroneous.

## II.  *Contempt*

Eversole argues that the circuit court abused its discretion by not holding Miller in contempt for violating the parenting plan.  He specifically argues that she violated the order of the Polk County Circuit Court thirty-six times.  The order stated that the parties will allow communication with PE by video calls and "shall set a schedule for three (3) times per week."  Eversole also argues that Miller violated the 2017 temporary order, which stated that "the Court finds that it is in the best interests of the minor child that the parents develop a co-parenting relationship for parenting the minor child."  Miller argues that the contempt allegations were based on evidence that the circuit court did not find credible.

We review a circuit court's refusal to punish an alleged contemnor using an abuse-of-discretion standard.  *Byrd v. Vanderpool*, 104 Ark. App. 239, 290 S.W.3d 610 (2009).  A circuit court abuses its discretion when it acts thoughtlessly and without due consideration.  *Harral v. McGaha*, 2013 Ark. App. 320, 427 S.W.3d 769.  For a person to be held in contempt for violating a court order, that order must be clear and definite as to the duties imposed upon the party, and the directions must be expressed rather than implied.  *Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995).  A person cannot be held in contempt for failing to do something that the circuit court did not order.  *Id.*

In *Harral*, we noted that although a mother had technically violated the court's order, the violation had ended more than a year before the court declined to hold her in contempt. We held that the circuit court did not abuse its discretion.  Here, Eversole alleged that in

12

the year prior to the final hearing, there was one week in which he did not receive his three FaceTime calls. In the previous year, he alleged it happened seven times, although his exhibit shows that he did not request three calls in two of those weeks. Additionally, two of the videos that were played at the hearing were alleged to have occurred on dates in April 2017 that were not counted in his exhibit. Furthermore, because there was not testimony on all the dates, it is unknown how many missed calls were due to legitimate scheduling issues. Under these circumstances, we hold that the circuit court did not act thoughtlessly and without due consideration in declining to hold Miller in contempt. Regarding Eversole's argument that Miller violated the order to develop a coparenting relationship, we hold that this order did not impose clear and definite duties upon Miller such that the circuit court abused its discretion in failing to hold her in contempt.

### III. *Child-Support Abatement*

In his testimony, Eversole asked for an abatement of his child support when he has extended visitation in the summer. He introduced an exhibit requesting abatement of half of his child support for the months of June 2017, July 2017, and June 2018, totaling $1515. In the circuit court's oral ruling it stated that it would withhold making an oral ruling on the abatement issue in order to consider it further. The court's order states that Eversole "failed to provide sufficient evidence to meet his burden that a material change in circumstance has occurred to warrant a change in his child support obligation or financial obligation regarding insurance and travel expenses and his motion to amend the parenting plan regarding those issues is denied."

Eversole argues that an abatement of child support during summer visitation is "standard" under Administrative Order No. 10 and that there does not need to be a material change of circumstances. Miller argues that an abatement is a modification that requires a material change in circumstances, and Eversole provided no evidence showing such a change. Administrative Order No. 10, section (VI) provides in part that

> in those situations in which a child spends in excess of 14 consecutive days with the noncustodial parent, the court should consider whether an adjustment in child support is appropriate, giving consideration to the fixed obligations of the custodial parent which are attributable to the child, to the increased costs of the noncustodial parent associated with the child's visit, and to the relative incomes of both parents.

Section (VI) addresses an adjustment a circuit court may consider in setting child support. A party seeking modification of child support has the burden of showing a change in circumstances sufficient to warrant a modification, and there is a presumption that the circuit court correctly fixed the proper amount in the original divorce decree. *Morgan v. Morgan*, 2018 Ark. App. 316, 552 S.W.3d 10. The Polk County Circuit Court modified Eversole's child-support obligation to the monthly amount of $1465 but reduced it by $240 in the months he exercises visitation. Eversole does not allege a material change in circumstances since that order and does not address the factors set out in section (VI) for a court to consider in making such an adjustment. Accordingly, we cannot say that the circuit court's ruling was clearly erroneous.

IV. *Travel and Insurance Expenses*

Eversole testified that it costs him an average of $1500 a month to travel to Arkansas for his visitation and that Miller's inflexibility and refusal to allow him to pick up PE early had led to $5145 in additional unnecessary expenses. He argues that he should be awarded

this amount. He introduced an exhibit listing extra expenses he alleged he incurred on six trips in 2014 and 2015 due to Miller's failure to be flexible. He testified that the only flight he can get to Little Rock arrives at 1:00 p.m., and if Miller allows him to pick PE up early, he can bring PE back to Georgia on the same day and avoid additional expenses. The parenting plan states that weekend visitation shall begin at 6:00 p.m. and that summer visitation shall begin on Sunday at 6:00 p.m. unless otherwise mutually agreed upon. On cross-examination, Eversole acknowledged that Miller had accommodated him and allowed him to pick up PE early a few times, but he did not know how many. Miller testified that the times when she refused to allow Eversole to have an early pick-up time were because it was very stressful, they were not communicating well, and "it seemed whenever I did offer any flexibility it became the new norm." She said that it became a problem if she could not accommodate him the next time, and it seemed easier to abide by the parenting plan. She said that their communication had since improved, and she does allow him early pick-up times.

Eversole also argues that he should be awarded $4250 in unnecessary insurance expenses. He testified that he was responsible for carrying health insurance for PE under the parenting plan, but in 2014, he learned that Miller had insured PE under the Indian Nation; and in 2015, he learned that she had been covered under ARKids First from May 2013 until Miller became employed at UAMS. He requested reimbursement for twenty-five months of $170 payments he had made from November 2014 to December 2016. He claimed that he had provided Miller with names of many doctors in her area who would accept his insurance and denied that she had notified him of PE's other coverage.

15

Miller testified that Eversole's insurance was not accepted at her local hospital in Polk County, so she put PE on ARKids First to cover what Eversole's insurance did not cover. She said that she continued to use Eversole's insurance but that she got the additional insurance to save money because she was responsible for the copayments and could not afford the out-of-network copayments. Miller said that she did notify Eversole at some point that she had put PE on ARKids First and that PE was on it for less than a year. When the memorandum of understanding was entered in December 2016, it was agreed that Eversole would pay the premiums for PE to be insured on Miller's employer-based insurance.

Eversole argues that there has been a material change in circumstances, but he does not request any relief in the future; he only requests that he be reimbursed for "unnecessary" expenses paid from 2014 through 2016. Miller argues that that these are expenses that he agreed to pay in the parenting plan and that her reliance on the parenting plan is not a material change in circumstance.

Regarding the travel costs, while it would have been preferable if the parties could have come to an agreement, the parenting plan allowed Miller to rely on its stated times in the absence of such an agreement. From Eversole's evidence, this has apparently not been a problem since late 2015. Regarding the insurance, the evidence was not clear on the dates that PE was covered by more than one insurance policy, and Miller testified that her intent was only to have PE covered locally. Under these circumstances, we hold that the circuit court did not clearly err in denying Eversole's requests for reimbursement.

16

V. *Attorney's Fees*

Eversole requested attorney's fees of more than $25,000 for defending a motion to dismiss and a motion for summary judgment filed by Miller earlier in the case.[4] Miller sought attorney's fees and costs in the amount of $49,935.85 for defending against the various motions filed by Eversole and for prevailing at the final hearing. At a hearing on the competing motions, Miller's attorney argued that the multiple continuances, the many motions Eversole filed, and the "unbelievable amount of discovery" entitled Miller to an award of all of her fees. Miller testified that her fees were reduced because her counsel charged her a reduced hourly rate, did not charge her for all work performed, and allowed her to review some of the discovery herself. Eversole's attorney maintained that Miller should not be awarded fees relating to her failed motions and argued that because the court had not presided over the entire case, it had not been in a superior position to observe the parties.

The circuit court found that Miller presented credible evidence that she had expended more than $49,000 in defense of her case. The court stated that it considered the lack of strength of Eversole's parental-alienation theory as well as his attitude and demeanor toward litigation in its award of fees. The court found that because Eversole's case was built on the faulty premise of alienation, it would not order an offset based on Eversole's prevailing on the motion to dismiss and the motion for summary judgment. However, the

---

[4]The motion to dismiss was never ruled on, but Eversole had argued that it was untimely on procedural grounds. The motion for summary judgment was based on the same allegations as the motion to dismiss. Following a hearing, the motion for summary judgment was denied by Judge Barbara Webb.

court did order an offset based on its ruling in Eversole's favor on two minor issues: identification of Miller's husband as "dad" and PE's use of the internet. As a result, the court awarded Miller a total of $45,000.

In domestic-relations proceedings, the circuit court has the inherent power to award attorney fees, and the decision to award fees and the amount of those fees are matters within the discretion of the circuit court. *James v. Walchli*, 2015 Ark. App. 562, 472 S.W.3d 504. Absent an abuse of that discretion, an award of fees will not be disturbed on appeal. *Id*. There is no fixed formula for determining what constitutes a reasonable amount of attorney fees. *Id*. Because the circuit court has presided over the case and gained familiarity with the case and the extent and quality of the services rendered by the attorney, the circuit court has a superior opportunity to assess the critical factors that apply. *Id*.

Eversole argues that because this case was presided over by several different circuit court judges and because Judge Casady heard only the final hearing in the matter, Judge Casady was not in a superior position to evaluate the requests for fees. He argues that it was error to find that his entire case was built on a theory of alienation because he had also alleged other issues, including that Miller had failed to follow court orders. Miller argues that Eversole cites no facts to support his contention that the circuit court did not familiarize itself with the record in the case. She further contends that her motions were not improper and that she ultimately prevailed on the subject of those motions at the final hearing.

As Miller points out, Eversole's request for fees for prevailing on her motions is contradictory to his claim that the court cannot adequately decide a request for fees relating to matters over which it did not preside. While the court was not in the same position it

18

would have been in had it presided over the case since its inception, we hold that it was still able to adequately evaluate the requests for attorney's fees. Although Eversole disputes the circuit court's characterization of his case, it is apparent that the court reviewed the history of the case to reach its conclusions. Pertinent considerations in determining an attorney-fee amount are the attorney's judgment, learning, ability, skill, experience, and professional standing; the relationship between the parties and the importance of the subject matter of the case; the nature, extent, and difficulties of services; the research, anticipation of defenses and means of meeting them; and receiving of confidential information and giving of confidential advice before any pleadings are filed or other visual steps are taken. *James, supra.* The circuit court was in a position to evaluate these factors, and Eversole has failed to demonstrate an abuse of discretion.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Owings Law Firm*, by: *Steven A. Owings* and *Tammy B. Gattis*, for appellant.

*Hope, Trice, O'Dwyer & Wilson, P.A.*, by: *Kevin M. O'Dwyer* and *Christopher B. Arnold*, for appellee.

19