Cite as 2021 Ark. App. 161

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–20–210

| | |
|---|---|
| FREDERICK R. POTTER, INDIVIDUALLY AND AS TRUSTEE OF THE FREDERICK R. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004, AND AS TRUSTEE OF THE FRED POTTER REVOCABLE TRUST ESTABLISHED JULY 10, 2013 <br><br> APPELLANT <br><br> V. <br><br> CASSAUNDRA HOLMES, INDIVIDUALLY AND AS TRUSTEE OF THE BETTY L. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004; THOMAS WRIGHT; AND KEVIN WRIGHT <br> APPELLEES | **Opinion Delivered:** April 14, 2021 <br><br> APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64CV-13-54] <br><br> HONORABLE DAVID H. MCCORMICK, JUDGE <br><br><br><br> AFFIRMED |

**ROBERT J. GLADWIN, Judge**

On September 9, 2020, we issued three opinions that affirmed a series of orders in which the circuit court found appellant Frederick R. Potter in contempt after he had repeatedly failed to comply with a partition order that directed him to return certain items of trust property to his home in Waldron. *See Potter v. Holmes*, 2020 Ark. App. 391, 609 S.W.3d 422 (*Potter I*); *Potter v. Holmes*, 2020 Ark. App. 388, 609 S.W.3d 404 (*Potter II*); and *Potter v. Holmes*, 2020 Ark. App. 383, 608 S.W.3d 618 (*Potter III*). As relevant here, we held that sufficient evidence supported the finding of contempt in each case. Additionally, in

*Potter III*, we denied Potter's request to reduce a $1,000 daily fine that the circuit court imposed to coerce Potter to comply with its orders. Among other things, we concluded that the $1,000 daily fine was not excessive because Potter "has willfully—and consistently—disregarded the circuit court's orders regarding the personal property belonging to the trusts." *Id.* at 16, 608 S.W.3d at 628.

Potter's disobedience continued while *Potter I*, *Potter II*, and *Potter III* were pending in this court, and the circuit court entered another contempt order on January 21, 2020. Potter contends on appeal that the new finding of contempt is not supported by sufficient evidence, and the $1,000 daily fine—which remained unpaid—is excessive. We affirm.

## I. *Factual Background*

We provided a detailed factual background of the contempt orders in *Potter III*, 2020 Ark. App. 383, at 1–11, 608 S.W.3d at 621–25. Consequently, we just briefly summarize those facts here. Potter and his wife, Betty, executed reciprocal, mirror-image trusts into which they transferred certificates of deposit, real property, and all of their personal property. Appellee Cassaundra Holmes became the successor trustee of Betty's trust when Betty died in January 2013.[1]

Potter and Holmes thereafter could not agree on the personal property that belonged to Betty's trust, eventually leading to a partition order that the circuit court entered on December 9, 2017. Among other things, the partition order directed Potter to return several items of personal property that he had taken from his and Betty's house in Waldron,

---

[1]The beneficiaries of the trusts include appellee Cassaundra Holmes and appellees Thomas Wright and Kevin Wright.

including furniture, appliances, precious metals, and jewelry. The circuit court also directed Potter to provide Holmes with advance notice of the date and time that he intended to return the property, as well as a detailed list of items he returned.

Potter did not return all the personal property listed in the partition order or provide an adequate list of items returned to Holmes. The circuit court held him in contempt in the series of orders that we affirmed in *Potter I*, *Potter II*, and *Potter III*. The last of those, which we reviewed in *Potter III*, was entered on March 8, 2019. In that order, the circuit court found Potter in willful contempt of its previous orders regarding the return of the property, and the court imposed a $1,000 daily fine to compel Potter's compliance. The order also directed Potter to return several items of personal property that remained outstanding, including gold and silver coins, gold and silver bullion, silver rounds, and Betty's wedding rings. The court further ordered Potter "to provide a numbered set of photographs showing the item to be returned and a detailed list describing each item to be returned by reference to the numbered photographs."

Holmes thereafter filed another motion for contempt on April 4, 2019. She alleged that Potter had not complied with all the directives of the contempt order entered on March 8, 2019. As relevant here, she asserted that Potter had not made any payment of the $1,000 daily fine to the circuit clerk, and he had not returned any of the missing silver coins, silver bullion, silver rounds, money, gold bullion, and other coins to Holmes. She further contended that Potter also had not provided photographs of any returned property, and he had not returned Betty's wedding rings.

The court heard the motion on January 9, 2020. At the hearing, Holmes testified that Potter had not paid $1,000 a day to the circuit clerk as the circuit court ordered him to do. He also had not returned any coins, bullion, or silver rounds to her. Holmes further testified that Potter had not returned Betty's wedding rings or provided any numbered photographs or a detailed listing of the items that he had returned to the house in Waldron. Consequently, in addition to a finding of contempt, Holmes requested that the court issue writs of assistance to get the unreturned silver from Potter's safe deposit box and to retrieve Betty's wedding rings.

When he took the stand, Potter admitted that he had not paid $1,000 a day to the circuit clerk. He also testified that since the circuit court's previous contempt order, he had not returned any silver coins, silver bullion, silver rounds, money, gold bullion, or other coins to Holmes. Potter also admitted that he had not prepared or provided numbered photographs showing each item returned and a detailed list describing each item. Potter further acknowledged that "Betty's diamond wedding ring [was] still at [his] lawyer's office."

On cross-examination, Potter claimed that he had not paid the $1,000 daily fine because the court-imposed freeze on his trust assets had his money "tied up." He admitted however, that he purchased an automobile—a Cadillac—since the court entered the order on March 8, 2019.

Potter also appeared to explain his noncompliance with the court's other directives by testifying that he did not understand how personal property was transferred to Betty's trust. Additionally, in the following colloquy, he claimed that he had "never seen" the court's previous orders:

| | |
|---|---|
| THE COURT: | . . . Do you read the orders I issue? |
| POTTER: | I've never seen those orders. |
| THE COURT: | Why not? |
| POTTER: | I don't know why. |
| THE COURT: | I don't know why either because you're here in court and I've ordered you to do things and you just don't bother to read the orders to see what I've ordered you to do? |
| POTTER: | I've never seen an order yet. |
| THE COURT: | So in seven years, you haven't bothered to look at an order? |
| POTTER: | I don't know how to go about all of that stuff. I try to do the best I can. I try. |

On January 20, 2020, the circuit court entered another order finding Potter in contempt. The court ruled that Potter was "in willful contempt of this court's orders from and since March 8, 2019." The circuit court ordered, therefore, that Potter's trusts "shall immediately transfer the lump sum of [$307,000] . . . to the registry of the Scott County Circuit Clerk," as that amount represents "the $1,000.00 a day owed by [Potter] from March 8, 2019 to January 5, 2019." The circuit court further ordered that Potter's trusts "shall immediately transfer each and every week the lump sum of [$7,000] . . . to the registry of the Scott County Circuit Clerk," as that represents "the $1,000.00 a day owed by [Potter] for each seven-day period," beginning on January 10, 2020. The trusts were to continue the $7,000 weekly payments "until further written order of this court that [Potter] has purged himself of contempt and complied with the orders of this court." The circuit court also issued two writs of assistance that directed the county sheriff to assist Holmes in

retrieving Betty's rings from Potter's attorney and the bullion and coins from Potter's safe deposit boxes. Potter now appeals the circuit court's contempt order.

## II. *Discussion*

### A. Sufficiency of the Evidence

Potter first argues that the January 20, 2020 contempt order should be reversed because insufficient evidence supports the circuit court's finding that he willfully disobeyed the court's prior orders. He suggests that it is unclear whether the circuit court found him in civil or criminal contempt, but he asserts that the evidence is insufficient even under the less demanding "preponderance of the evidence" standard for civil contempt. In particular, he contends that Holmes offered testimony establishing only that he failed to follow the directives of the March 8, 2019 order, and she failed to offer testimony or exhibits to establish that he was actually *able* to do so. We disagree.

As in *Potter III*, it is unclear whether the circuit court made a finding of civil or criminal contempt in the order entered on January 21, 2020. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Stehle v. Zimmerebner*, 2016 Ark. 290, at 5, 497 S.W.3d 188, 192. In contrast, civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id*. at 7, 497 S.W.3d at 192. "[T]he line between civil and criminal contempt may blur at times"; consequently, our focus for distinguishing the two "is on the character of the relief rather than the nature of the proceeding." *Ivy v. Keith*, 351 Ark. 269, 280, 92 S.W.3d 671, 677 (2002).

"[C]ivil contempt is designed to coerce compliance with the court's order"; therefore, a finding of civil contempt occurs when the circuit court indicates that "the contemnor may free himself or herself by complying with the order." *Id.* at 280, 92 S.W.3d at 678. Indeed, "[t]his is the source of the familiar refrain that civil contemnors 'carry the keys of their prison in their own pockets.'" *Id.* (internal citations omitted). "Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged." *Id.*

Moreover, "[a] contempt fine for willful disobedience that is payable to the complainant is remedial, and therefore constitutes a fine for civil contempt, but if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt." *Applegate v. Applegate*, 101 Ark. App. 289, 294, 275 S.W.3d 682, 685 (2008). A fine payable to the court is also remedial, however, "when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Id.*

The contempt order here has both civil and criminal features. The court ordered Potter to unconditionally pay the cumulative amount of the fine as of the date of the order, directing Potter to "immediately transfer the lump sum of $307,000 from [both of his trust accounts] to the registry of the Scott County Circuit Clerk." The order further provided, however, that Potter's future obligation to pay the fine continued "until further written order of this court that [Potter] has purged himself of the contempt and complied with the orders of this court," suggesting that the fine was also intended to compel Potter's compliance. For these reasons, we conclude that this was both a civil- and criminal-contempt proceeding.

In such cases, this court applies the standard of review for criminal contempt because it, as well as the burden of proof, is stricter than for civil contempt. *Potter III*, 2020 Ark App. 383, at 13, 608 S.W.3d at 626–27. "In order to establish contempt, there must be a willful disobedience of a valid order of the court." *Id*. at 14, 608 S.W.3d at 627. "In a criminal contempt proceeding, proof of contempt must exist in the circuit court beyond a reasonable doubt." *Id*. at 13, 608 S.W.3d at 627. On appellate review, we consider the evidence in the light most favorable to the circuit court's decision concerning the contempt and affirm if there is substantial evidence to support its decision. *Id*. at 13–14, 608 S.W.3d at 627. "We leave issues of credibility, however, for the fact-finder." *Id*.

Substantial evidence supports the finding of contempt. Potter admitted that he never paid any of the $1,000 daily penalty since (or even before) the circuit court entered the March 8, 2019 contempt order. He further conceded that he had not returned any of the wedding rings, gold, or silver; and he had not provided photographs and an itemized list of the property he returned.

Potter was also willfully disobedient. As we noted in *Potter I*, "[t]he analysis of whether a litigant willfully violated a court order properly encompasses the litigant's behavior in related incidents such as disobedience or resistance to other orders of the court," *id*. at 11, 609 S.W.3d at 429, and Potter resisted the court's orders throughout the proceedings. He also admitted that he was willfully ignorant of all the directives in the court's previous orders—he testified that he did not read any of them. Potter's claim that he could not pay any of the $1,000 daily penalty, moreover, is undermined by his purchase of an automobile since the circuit court entered the contempt order on March 8, 2019.

Accordingly, there was substantial evidence to support the circuit court's finding that Potter was willfully disobedient.

Potter's suggestion that the court's orders have been unclear about the ownership of the silver is also unavailing. "The law-of-the-case doctrine provides that the decision of an appellate court establishes the law of the case for the [circuit] court upon remand, and for the appellate court itself upon subsequent review, and is conclusive of every question of law and fact previously decided in the former appeal[.]" *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 298, 210 S.W. 3d 126, 133 (2005). We have already determined that the partition order entered on December 29, 2017 (which first directed the return of the silver), was clear in its terms and express in its commands. *See Potter I*, 2020 Ark. App. 391, at 10, 609 S.W.3d at 429; *Potter II*, 2020 Ark. App. 388, at 8, 609 S.W.3d at 409. We also held that we would not look behind the partition order to determine whether it correctly determined the property that belonged to the trusts. *See Potter I*, 2020 Ark. App. 391, at 10–11, 609 S.W.3d at 429; *Potter II*, 2020 Ark. App. 388, at 8, 609 S.W.3d at 409. Potter does not contend, moreover, that the evidence has materially changed since we decided those appeals. *See Turner*, 91 Ark. App. at 299, 210 S.W.3d 134 (providing that law of the case has no application when the evidence materially varies from the previous appeal). Therefore, Potter cannot prevail on those arguments here.

## B. Excessive Fine

Potter next argues that we should reduce the $1,000 daily fine that the circuit court imposed. In particular, he asserts that amount of the fine is disproportionate to the purpose of the contempt, which is to compel him to obey the partition order. He also asserts that

the circuit court arbitrarily imposed the fine. The circuit court failed to make any determination, Potter says, of whether the amount of the fine was proportional to the value of the property to be returned. Because this court has already determined that the $1,000 daily fine is not excessive, we apply the law-of-the-case doctrine to bar consideration of that issue again here.

In *Potter III*, we determined that "Potter's $1,000 daily fine is not excessive under the circumstances." *Id*. at 16, 608 S.W.3d at 628. In doing so, we observed the following:

> Potter's recalcitrance cannot be overstated. As we note above, he has willfully—and consistently—disregarded the circuit court's orders regarding the personal property belonging to the trusts. The fine was originally imposed in the contempt order that the circuit court entered on June 26, 2018, and at least as of the hearing on August 9, 2018, Potter had not paid any of it. Additionally, as the circuit court noted, imprisonment is no longer a viable option for compelling Potter to comply. In short, a $1,000 daily penalty until Potter complies with the partition order is indeed necessary to protect public confidence in the law and the integrity of the judicial system. His request for a reduction, therefore, is denied.

*Id*. Accordingly, because we already determined that the fine is not excessive in *Potter III*, and Potter has not pointed to a material change in the evidence since that appeal, we decline to consider the issue again in this case.

Potter's argument that the circuit court arbitrarily imposed the fine, which he makes for the first time here, is also barred by the law-of-the-case doctrine. In addition to issues of law and fact that an appellate court previously decided, the doctrine also applies to those "that could have been raised and decided in the first appeal, but were not presented." *Turner*, 91 Ark. App. at 298, 210 S.W.3d at 133. Indeed, "[t]he rule is grounded on a policy of avoiding piecemeal litigation"; therefore, "the law-of-the-case doctrine prevents consideration of an argument that could have been made at trial and also prevents

consideration of an argument that could have been raised in the first appeal and is not made until the subsequent appeal." *Id.* Potter could have argued that the circuit court arbitrarily imposed the fine in *Potter III*. He did not; consequently, he is barred from doing so here.

### III. *Conclusion*

Substantial evidence supports the finding of contempt. The evidence at the hearing demonstrated that Potter had not complied with the circuit court's previous orders, and his disobedience was willful. Potter's claim that the $1,000 daily fine imposed by the circuit court is excessive, moreover, is barred by the law-of-the-case doctrine.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Kevin L. Hickey*, for appellant.

*Skinner Law Firm, P.A.*, by: *Jack Skinner*, for separate appellee Cassaundra Holmes.